MACK INVESTMENT COMPANY, APPELLEE, v. R. E. DOMINY ET AL., APPELLANTS.

1 N. W. (2d) 295

FILED DECEMBER 12, 1941. No. 31236.

*Torgeson & Halcomb,* for appellants.

*R. P. Kepler* and *John H. Kuns, contra.*

*Walter R. Johnson, Attorney General, Robert A. Nelson, Theodore L. Richling, Peter E. Marchetti* and *Flansburg & Flansburg, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is a replevin action wherein plaintiff (appellee) seeks to recover possession of a 1936 model Chevrolet pick-up coupé, of the stipulated value of $250, by reason of a chattel mortgage, given by defendants (appellants) to the plaintiff to secure the payment of a note as hereinafter described. This action was originally filed in the county court, resulting in a dismissal. The plaintiff appealed to the district court. Plaintiff's petition in the district court alleges in substance:

The plaintiff is a trade-name for John H. Mack (referred to hereinafter as plaintiff), who has been licensed

since June 1, 1939, to transact business as a loan broker, as provided for by law. Plaintiff claims a special property in the Chevrolet pick-up by virtue of a chattel mortgage, securing payment of a note dated June 1, 1939, upon which the defendants have made two payments, viz., July 3, 1939, $24.99; September 5, 1939, $24.99. No other payments have been made. The petition alleges plaintiff's right to immediate possession of the Chevrolet pick-up, damages, and further prays judgment for the sum of $343.75, together with interest thereon at the rate of 10 per cent. per annum from September 5, 1939. The original petition of replevin, filed by plaintiff in the county court, setting forth in substance the same facts, states that there was due plaintiff $399.84. The amended petition for replevin, filed by plaintiff in the county court, prays judgment against the defendants for the sum of $362.13, with interest at 10 per cent. per annum from September 18, 1939, the amount due on the chattel mortgage. Defendants' answer in the district court contains a general denial, admits that defendants borrowed $350 from the plaintiff and promised to pay plaintiff, in consideration of a loan, in 18 monthly instalments of $24.99 each, or $449.82; alleges that the contract is usurious and constitutes a charge in excess of that permitted by the statutes of Nebraska. Thus, it is apparent that plaintiff, in his original pleadings, made an effort to collect the full amount of the note.

The court, in consideration of the motions of both plaintiff and defendants to return a verdict in favor of each respective movant, made a finding generally for the plaintiff and against the defendants; that on June 1, 1939, plaintiff loaned $350 to the defendants, who executed a note; that the defendants made the payments as heretofore set forth in plaintiff's petition; that plaintiff was entitled to possession of the Chevrolet 1936 pick-up, of the value of $250; that plaintiff has been damaged in the sum of one cent. After motion for a new trial was overruled, defendants appealed to this court.

The principal assignment of error is that the judgment of the district court is erroneous in that the court failed to find such contract usurious and void. This involves a consideration of certain provisions of the small loan act. Comp. St. 1929, secs. 45-112 to 45-123, inclusive. The purpose and intent of the legislature in passing this act were to protect the borrower against excessive and usurious rates of interest on small loans, and other charges, made under one subterfuge or another, and to control and regulate, rather than protect, the lender.

The legislature has the power to regulate interest, and legislation like that under consideration (the small loan act) is within the police power of the state. *Althaus v. State,* 99 Neb. 465, 156 N. W. 1038; *Griffith v. State of Connecticut,* 218 U. S. 563, 31 S. Ct. 132. The law regulates the interest chargeable by licensed lenders authorized to make an additional charge, called a "brokerage fee," not exceeding one-tenth of the money actually lent and, in exceptional cases, to charge an examination fee of 50 cents.

The plaintiff contends that the fine print contained in the chattel mortgage form (exhibit 1) provides that it would not be entitled to collect any more than the law permits under the small loan act. An analysis of this language and of the typewritten parts of the chattel mortgage and other evidence discloses the intent of the plaintiff to collect the full amount of the note.

"When an instrument consists partly of written and partly of printed form, the former controls the latter, where the two are inconsistent." Comp. St. 1929, sec. 20-1216. Typewriting is writing within the contemplation of the statute, providing that, when an instrument consists partly of written and partly of printed form, the written controls the printed form, where the two are inconsistent. *New Masonic Temple Ass'n v. Globe Indemnity Co.,* 134 Neb. 731, 279 N. W. 475.

The chattel mortgage, given by the defendants to the plaintiff June 1, 1939, in the original amount of $350, sets out as security the Chevrolet pick-up and certain house-

hold goods, and, in addition, sets out in typing that "18 payments of $24.99" are to be made by defendants to the plaintiff. The instalment payments aforesaid were computed on the basis of anticipating the amount of principal which would be due at the end of six months, and adding to that amount a 10 per cent. brokerage fee on the unpaid balance, and anticipating the regular payments would be met until the end of the six-month period. An additional brokerage fee was charged on the unpaid principal remaining a year from June 1, 1939. Originally, a brokerage fee of $35 was charged when the loan was made June 1, 1939, which was due and payable at the end of the first six-month period, viz., December 1, 1939, in accordance with the terms of the note.

The cases of *Grand Island Finance Co. v. Fowler,* 124 Neb. 514, 247 N. W. 429, and *Fidelity Finance Co. v. Westfall,* 127 Neb. 56, 254 N. W. 710, are not controlling. The facts and parties present a different situation than exists in the instant case, rendering such decisions of little value in determining the case at bar. The case of *Personal Finance Co. v. Gilinsky Fruit Co.,* 127 Neb. 450, 255 N. W. 558, is under a different section of the statute from that involved herein and is of no value in determining the case before us.

Section 45-119, Comp. St. 1929, provides in part: "Any person * * * shall be entitled to loan money * * * and to charge the borrower thereof for its use or loan, interest not to exceed the rate of ten *per centum per annum* and a brokerage fee of not more than one-tenth of the amount actually loaned. No charge in addition to the said interest and brokerage fee shall be *exacted, charged* or collected * * *. *It shall not be lawful* for said lender to divide or split up applications for loans or said loans under any pretext whatsoever so as to require or exact *any other or greater charges* than prescribed herein; * * * Said licensee shall be entitled to charge for each renewal, extension or transfer of any loan made *after the expiration of six months from date of said loan a new brokerage fee* as

hereinbefore specified, providing said renewal, extension or transfer shall be for a period of not less than six months from date of making said renewal, extension or transfer; and said new brokerage fee shall be chargeable only upon the balance of the principal * * *. The brokerage fee chargeable either upon an original loan or upon a renewal, extension or transfer shall not be payable in advance but only upon final payment of loan. * * * If interest or charges in excess of those hereinbefore prescribed shall be received by any licensee, the said licensee shall thereupon lose all his right to collect or receive any sum whatever on said indebtedness." (Italics ours.)

Plaintiff's contention is that the forfeiture contemplated in section 45-119, Comp. St. 1929, cannot be inflicted unless the record shows that excessive charges were actually received by a licensee; that the two payments made by the defendants in the instant case were on July 3 and September 5, 1939, and made within six months following the making of the loan by agreement of the parties, and that such payments were applied only to the interest and principal.

The loan in the instant case is definitely for a period of 18 months. The contract provided for three brokerage fees on accounts to be due, anticipated by the lender. The language contained in section 45-119, *supra,* is clear and explicit that not more than one brokerage charge can be made on any one loan,—"No charge in addition to the said interest and brokerage fee shall be exacted, charged or collected * * * ." Comp. St. 1929, sec. 45-119. In the event a loan is renewed, extended or transferred, the licensee shall be entitled to charge a brokerage fee *after* the expiration of six months from date of said loan upon the balance of principal. There is no evidence here of renewal, extension or transfer. Said section does not provide that the lender has the right to anticipate future brokerage fees. It provides for the brokerage fee to be charged upon the original loan or upon renewal, extension or transfer. It shall not be payable in advance but only upon final payment of loan.

The plaintiff relies on the words "shall be received," contained in the latter part of section 45-119, Comp. St. 1929. Attention is again directed to the language of said section: "No charge in addition to the said interest and brokerage fee shall be exacted, charged or collected." The distribution of the loan, as shown on exhibit 6, being a slip attached to a check and detached before the check was cashed, contains · the following:

"Bal. GMAC (General Motors Acceptance Corp.)   $61.64
"Cash                                          $288.36
                                               _____
"Loan                       .                  $350.00
"18 payments of $24.99 starting July 5, 1939."

On the back of the chattel mortgage a payment of $24.99 is noted, dated "9-18," with a balance of $399.84, placed there by a Denver bank which discounted plaintiff's paper; also a balance of "$424.83 JHM," placed there by direction of an employee of plaintiff who had charge of this loan. This evidence is conclusive that the plaintiff intended to collect from defendants 18 payments of $24.99 each; he merely delayed the payment over such period as is provided in the note. The excess brokerage charges must be said to permeate the whole loan and necessarily a part thereof is collected when each instalment is paid. The contract made between the parties fixed their status and the amounts agreed upon to be paid.

Plaintiff felt justified in securing three brokerage fees for one transaction, and it is the exacting and charging of the three brokerage fees, set up in the contract and agreed to be paid by the defendants, which constitute the violation of section 45-119, Comp. St. 1929. The action is based upon an illegal contract, contrary to the avowed public policy of this state, and the plaintiff, as licensee, loses all right, under section 45-119, Comp. St. 1929, to collect any sum whatever on this indebtedness. The letter of the statute admits of no other interpretation by any construction.

Other assignments of error need not be discussed. Suffice

it to say that section 45-121, Comp. St. 1929, is not involved in this action, and so far as the instant case is concerned, we are not required to interpret such section. We determine this case solely on the instrument before us, affecting this particular loan, and the applicability thereto of section 45-119, Comp. St. 1929.

We conclude that the judgment of the trial court should be and is hereby reversed, and the cause dismissed.

REVERSED AND DISMISSED.