ROY E. POWELL, DOING BUSINESS AS POWELL IMPLEMENT COMPANY, APPELLANT, V. ALVIN EDWARDS, APPELLEE.

75 N. W. 2d 122

Filed February 17, 1956. No. 33846.

*Daniel E. Owens,* for appellant.

*Hines & Hines,* for appellee.

*Gross, Welch, Vinardi & Kauffman,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a suit on a promissory note by Roy E. Powell, doing business as Powell Implement Company, plaintiff and appellant, against Alvin Edwards, defendant and appellee.

By the petition the plaintiff alleged that on June 12, 1952, the defendant executed and delivered to plaintiff his promissory note for $2,083.76 payable in four equal installments of $520.94 each, payable August 1952, February 1953, August 1953, and February 1954, with interest on unpaid balances after maturity at the highest lawful contract rate; that $520.94 had been paid; and that there was due and owing with interest $1,664.14. The suit was for $1,664.14 with interest from October 18, 1953.

To the petition the defendant filed an answer, an amended answer and cross-petition, and a second amended answer and cross-petition. To the second amended answer and cross-petition the plaintiff filed a reply and answer to the cross-petition. The submission of the case was on the petition, the defendant's second amended answer and cross-petition, and the reply and answer to the cross-petition.

By the answer the defendant generally denied all allegations of the petition except those admitted to be true. He admitted signing the note in question and that he had paid the first installment of $520.94.

As an affirmative defense the defendant pleaded substantially, to the extent necessary to set it forth here, that on May 29, 1952, he purchased a tractor from plaintiff the agreed price of which was $2,700 and that he gave in exchange a tractor of the value of $900; that he signed the note in question and also a chattel mortgage to secure it; that the plaintiff represented that the note was for the difference together with finance charges

and premium for necessary insurance upon the tractor; that plaintiff prepared the note and chattel mortgage upon forms furnished by Securities Acceptance Corporation and that the amount of the note was fixed by plaintiff pursuant to a rate book supplied by the Securities Acceptance Corporation; and that although the note was taken in the name of plaintiff it was in actuality taken by plaintiff as agent for the Securities Acceptance Corporation.

The defendant further pleaded that the note and mortgage were void and that neither principal nor interest was collectible for the reason that the transaction was violative of the provisions of sections 45-114 to 45-162, R. R. S. 1943, as amended; that it was violative of the installment loan law in the following particulars: That plaintiff failed to deliver to defendant a statement in the English language in clear and distinct terms, (a) the amount and date of the loan, (b) a description of the payments required, (c) the type of security of the loan, (d) the names and addresses of the licensee and all persons obligated on the note, and (e) the agreed rate of charge; that the plaintiff failed to deliver to the defendant within 15 days after making the loan an executed copy of the insurance policy; that plaintiff failed to comply with the laws relating to the operations of licensed loan companies; that the plaintiff made exorbitant and confiscatory charges; that the plaintiff deducted and received charges on the loan in advance; that the direct or indirect charge for interest upon the note and mortgage was in excess of the legal limit of 9 percent; that the plaintiff conducted the business of making loans within a place of business in which other business was conducted contrary to the prohibitions of statute; and that at all times mentioned the plaintiff was acting as the agent of the Securities Acceptance Corporation, a licensee under the installment loan law. The statutory provisions above referred to are a part of what is commonly referred to as the installment loan law.

As indicated the defendant filed a cross-petition. It however requires no consideration here. The decision upon it was unfavorable to the defendant but no appeal or cross-appeal has been taken from that decision.

In response to the answer the plaintiff filed a reply and answer to the cross-petition. In it the allegations of both were generally denied.

The action was tried to a jury at the conclusion of which the defendant moved for a directed verdict in his favor. The grounds were that the evidence showed that the grounds of defense set forth in the answer, which have been summarized herein, had been sustained.

Thereupon the plaintiff moved for a directed verdict in his favor. It related in part to the cross-petition and in part to plaintiff's cause of action and the defense thereto.

The motion of the defendant was sustained and plaintiff's cause of action was dismissed.

The motion of plaintiff to the extent that it referred to the cross-petition was sustained and the cross-petition was dismissed. It was otherwise effectually overruled.

The plaintiff filed a motion for new trial which was duly overruled. It is from the judgment dismissing plaintiff's motion and the order overruling the motion for new trial that he has appealed.

Four assignments of error are set forth as grounds for reversal. The first is that the verdict is contrary to the evidence. The second is that the verdict is contrary to law. Obviously the intent was to assert that the judgment is contrary to the evidence and the law since there was no verdict. The third is that the court erred in permitting the defendant to file a second amended answer and cross-petition. And the fourth is that the court erred in overruling plaintiff's motion for a directed verdict and in sustaining defendant's motion for a directed verdict.

It appears that the first point to which attention should be directed is that, assuming that the factual contention

is supported by the evidence, of whether or not the installment loan law is operative against the transaction and against the plaintiff. In other words, does the fact that the plaintiff committed acts violative of conditions for the making of loans under the installment loan law have the effect of defeating plaintiff's right to recover the principal and interest or either provided for in the promissory note in question?

Sections 45-114 to 45-162, R. R. S. 1943, with amendments, have reference particularly to installment loans. Sections 45-123, 45-138, and 45-139, R. R. S. 1943, have been amended in particulars not important here. The amendments could not apply in any event since they came after the consummation of this transaction. Hereinafter, therefore, statutory references will be to R. R. S. 1943. Sections 45-156 to 45-162, R. R. S. 1943, have no bearing on this case.

The design of this law is to license and control the business of making installment loans and to restrict the enforcement of collection of illegal loans once they have been made. Primarily the design, as is apparent, was that the law should have application to the duties and obligations of licensees and the rights and liabilities of those obtaining loans from licensees.

This case does not however present such a situation. It presents, under the facts, a situation where the claim is that one not a licensee has committed acts violative of the prohibitions of the law, thus entitling the defendant to have the apparent obligation of the note in question declared void and unenforceable.

This is true since it is clear that plaintiff was not a licensee under the law, and while it may be true that under the evidence the trial court was justified in finding that the plaintiff acted in the premises as agent of Securities Acceptance Corporation, there is no evidence upon which to base a finding that Securities Acceptance Corporation was a licensee. The question of agency in this respect will be later adverted to herein.

Section 45-138, R. R. S. 1943, provides in part as follows: "No licensee shall directly or indirectly charge, contract for or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars. * * * Any contract of loan made in violation of this paragraph, either knowingly or without the exercise of due care to prevent the same, shall be void, and the licensee shall have no right to collect or receive any principal, interest or charges on such loan."

Section 45-153, R. R. S. 1943, provides: "Any person, firm, partnership, corporation or association, or officer or employee thereof, violating any of the provisions of sections 45-138 to 45-145, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than one thousand dollars, or shall be imprisoned in the county jail for not less than thirty days nor more than six months, or both."

This section makes all who violate the inhibitory provisions of the law, whether they be licensees, officers or employees of licensees, or nonlicensees, guilty of a misdemeanor. The language in and of itself is capable of this interpretation and moreover it would be unreasonable to conclude that nonlicensees are free to engage in practices barred to licensees.

Section 45-154, R. R. S. 1943, provides: "Any contract of loan, in the making or collection of which any act is done which constitutes a misdemeanor under section 45-153, shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever."

If therefore the note in question was conclusively violative of section 45-138, R. R. S. 1943, either in the hands of the plaintiff or in the hands of Securities Acceptance Corporation through the agency of plaintiff then the entire indebtedness was void and uncollectible.

The evidence discloses that on or about May 30, 1952, the defendant entered into an arrangement with the plaintiff for the purchase of a new tractor. The plaintiff took in exchange as a part of the purchase price an old tractor. The balance of the purchase price the parties agree was $1,800. The defendant testified that the sale price of the new tractor was $2,700 and the old one was taken in for $900. The plaintiff testified that the price of the new tractor was $2,760 and that the old one was taken in for $960. Thus there was no dispute about the difference to be paid. The defendant did not pay the difference in cash. For what purported to be the balance apparently a promissory note and mortgage to secure it were prepared by an employee of the plaintiff and signed and delivered to plaintiff by the defendant. Just what the contents of the instruments were does not appear. The instruments do not appear in the evidence. However it appears that the instruments were prepared from a formula furnished plaintiff by Securities Acceptance Corporation. The testimony discloses that the defendant was informed that the instruments failed to conform to requirements of the Securities Acceptance Corporation. Thereupon pursuant to instructions received from the Securities Acceptance Corporation new instruments were prepared by an employee of plaintiff which were submitted to and signed by the defendant on June 12, 1952. The new instruments were a promissory note for $2,083.76, payable $520.94 in August 1952, $520.94 in February 1953, $520.94 in August 1953, and $520.94 in February 1954, with interest on the unpaid balance after maturity at the highest lawful contract rate, and a chattel mortgage as security for the payment of the note. The note was made on a form furnished by the Securities Acceptance Corporation and made payable at its office in Omaha, Nebraska. The note was endorsed to Securities Acceptance Corporation by plaintiff first as guarantor and then without recourse and immediately

delivered. Upon delivery the Securities Acceptance Corporation paid to plaintiff $1,800, the exact amount of the balance of the purchase ·price of the tractor. The defendant testified that the difference between $1,800 and $2,083.76 was represented by interest and insurance. A policy of insurance was issued and the premium on it was $35.36. Thus according to the testimony of the defendant the interest charges on the $1,800 were $248.40.

The plaintiff testified that the difference between the $1,800 and the $2,083.76 represented carrying charges on the contract. Effectually he testified that the charges were figured out by the Securities Acceptance Corporation. This appears from a portion of his testimony, as follows: "Q- Then this difference of, $1,800.00 subtracted from $2,083.76 would be $283.76, and deducting the $35.36 insurance, the rest of it would be finance charges and interest? A- They figure finance charges and interest and trips out to see wherever the party would be, and stuff like that."

On the evidence, the pertinent part of which has been summarized, in the plaintiff's brief and in a brief amici curiae on behalf of the Nebraska Association of Discount Companies it is contended substantially that the transaction involved was an incident of a dealer having one price on an article of merchandise for cash sale and another and higher one for a time sale and that here was a time sale at the higher price. The further contention is made that no violation of law was involved.

It is also contended that insofar as the Securities Acceptance Corporation is concerned plaintiff was in nowise its agent and that all it did was to purchase in good faith the note and mortgage from the plaintiff, which purchase did not constitute the making of a loan, but which transaction was lawful and not condemned by law.

It is of course true, as has been pointed out by the decisions of this court, that an automobile dealer may in good faith sell a car on time for a price in excess of

the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan. See, Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429; Fidelity Finance Co. v. Westfall, 127 Neb. 56, 254 N. W. 710; American Loan Plan v. Frazell, 135 Neb. 718, 283 N. W. 836; Underwriters Acceptance Corporation v. Dunkin, 152 Neb. 550, 41 N. W. 2d 855. It is also true that a time sale made in good faith at a price in excess of a cash price, even though the difference exceeds lawful interest for a loan, which price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as being tainted with usury. See, Grand Island Finance Co. v. Fowler, *supra;* Fidelity Finance Co. v. Westfall, *supra;* American Loan Plan v. Frazell, *supra;* Underwriters Acceptance Corporation v. Dunkin, *supra.*

These rules however do not apply where it is proved that the transaction was not made in good faith but that it was a scheme and a device pursued to evade the operation against it of the usury statute.

The case of Grand Island Finance Co. v. Fowler, *supra,* sustains the validity of transactions made in good faith. It may well be said also to condemn those wherein it has been proved that it was a scheme and device to evade the usury statutes.

That case in all of its pertinent aspects was like this one, except that the action was in replevin by the finance company, which finance company occupied the same status with regard to the transaction as does the Securities Acceptance Corporation here, to recover the security on account of default of payment. The defense was in its legal aspects the same as the defense here.

With regard to that transaction the court said: "If the transaction was a loan for usury, as asserted by defendant, instead of a sale on time, the contracting parties entered into an unlawful agreement."

Thus this court in that case declared very clearly that a transaction such as the defendant declares this one to be is an *unlawful agreement*. The case was decided in favor of the plaintiff and it was decided solely on failure of proof that the transaction was tainted with usury. The reasonable inference to be drawn from the three accompanying cited cases fully support this view.

The Securities Acceptance Corporation is not a party to this action and no witness who could in any way bind it by his testimony testified in this case. Also there is no testimony which identifies its status legally or otherwise except to the extent of the testimony relating to the negotiation of this transaction and receipt of the paper by it and the payment of money to the plaintiff.

It follows of course that it may not be bound by the testimony given in this case or by any judgment rendered herein. It follows also of course that the plaintiff bound himself by his own acts as proved and his testimony with regard to the transaction as he related it to be with regard to the relation of Securities Acceptance Corporation to the transaction.

By his testimony the plaintiff clearly declared that the note was drafted for the Securities Acceptance Corporation to include his cash price of $1,800 and interest, insurance, and finance charges on that amount, exacted by Securities Acceptance Corporation. His testimony is incapable of any other interpretation, notwithstanding the insistence of the plaintiff and amici curiae.

By computation it becomes readily apparent that the amount charged to the defendant in the note far exceeded the statutory permissible charge of interest on an installment loan in excess of $1,000. Section 45-138, R. R. S. 1943, provides as follows: "No licensee shall directly or indirectly charge, contract for or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggre-

gate indebtedness of the same person, in excess of one thousand dollars. * * *."

For this reason, in the light of statutes herein referred to, the note was void from its inception, and either in the hands of plaintiff or, in the light of the testimony of plaintiff, in the hands of the Securities Acceptance Corporation, neither the principal nor interest was collectible.

In this case no party questions the validity or constitutionality of the statutory provisions declaring a forfeiture of principal and interest in such situations as are involved here. The terms of the statute as they appear are therefore to be accepted.

The action of the district court in dismissing the petition of plaintiff and rendering judgment in favor of defendant must be said to be correct.

It is true that the finding on which the district court rendered its judgment is not the same as the one which is the basis for the conclusion arrived at here. However the theory on which the determination here is made is presented by the pleadings and the record made on the trial is germane to the theory.

The district court found the note given was one to which the installment loan law was applicable. It further found that section 45-145, R. R. S. 1943, a part thereof, exacted a statement from the plaintiff or Securities Acceptance Corporation to the defendant containing information relating to the transaction which was never given in consequence of which the note was rendered void and uncollectible.

None of the exactions were performed by plaintiff or Securities Acceptance Corporation, but on the record it could not be said that this failure could be the basis for the judgment rendered.

The exactions of the provision are imposed upon licensees but not upon nonlicensees. The plaintiff, it is clear, is not and there is no proof that Securities Acceptance Corporation is a licensee.

A judgment rendered by the district court which is free from error is not rendered invalid by the fact that the court gave an incorrect reason therefor. See, Longnecker v. Longnecker, 90 Neb. 784, 134 N. W. 926; Kanaly v. Bronson, 97 Neb. 322, 149 N. W. 781; Bastian v. Weber, 150 Neb. 709, 35 N. W. 2d 791; Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478.

In the light of these observations the conclusion is inevitable that the first, second, and fourth assignments of error are without merit. The third is not supported by legal authority and it has not been presented to this court by argument in the brief. It therefore will not be considered further herein.

The judgment of the district court is affirmed.

AFFIRMED.