## Dallas L. Wood et al., Appellees, v. Commonwealth Trailer Sales, Inc., a Corporation, Appellant.

110 N. W. 2d 87

Filed July 7, 1961. No. 35003.

*Wright & Simmons* and *James R. Hancock,* for appellant.

*Robert L. Gilbert,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action in equity instituted by Dallas L. Wood and Doris I. Wood, husband and wife, plaintiffs and appellees, against Commonwealth Trailer Sales, Inc., a corporation, defendant and appellant, to have declared null and void a certain conditional sales contract, to enjoin and restrain enforcement of the contract, to recover judgment for $2,200 paid on the contract with interest, to recover payments made into court, and for the costs of the action.

A trial was had to the court which resulted in a decree and judgment in favor of the plaintiffs and against the defendant for injunction on the ground that the contract was void, for $2,200 which had been paid to the defendant, for $440 which had been paid into court, and for interest and costs.

The defendant filed a motion for new trial which was overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed.

As grounds for reversal the defendant has set forth seven assignments of error. Of these, five deal with the kind and character of the transaction involved and in that view separate reference to these is not required. The other two will be mentioned in due course herein.

For the most part the pertinent facts in this case are not in dispute. At the inception of the transaction involved the plaintiffs lived in a trailer in Scottsbluff, Nebraska, which had been purchased from the defendant, a portion of the cost price of which had not been paid. The defendant was engaged in the maintenance and operation of a trailer sales lot also in Scottsbluff,

Nebraska. In November 1958, the plaintiffs discussed with the agent of the defendant the purchase of a trailer which was on the lot, the named price of which was $5,895. Following discussions this agent communicated with the president of the defendant at Wichita, Kansas, the home office of the defendant. After this incident the agent of the defendant again communicated with the plaintiffs. Whether this was late in November 1958 or on December 1, 1958, is in dispute. Whether or not there was an oral agreement as to the purchase is in dispute. The plaintiffs in their testimony assert that in November the parties orally agreed upon a plan of purchase and exchange of their trailer for one on the lot the price of which was $5,895. The agent of the defendant says that there was no agreement as to purchase and exchange until, as he believes, December 1, 1958. The agent said in effect that he thought that on December 1, a written contract was presented to and signed by plaintiffs and by him as agent for the defendant. He testified that if he is mistaken as to the exact date at least no plan of purchase was presented or agreed upon until the contract to which he had reference was actually presented to the plaintiffs, which is dated December 1, 1958.

The contract which was presented was denominated "Conditional Sale Contract" and is exhibit 1 in evidence in this case, and which, along with exhibit 2, is the contract which the plaintiffs seek to have declared null and void. Exhibit 2 is the same as exhibit 1 except as to the absence of the signature of Mrs. Wood. The two bear the same date but exhibit 2 was executed on a later date than was exhibit 1. The two cover the same transaction. The only purpose of exhibit 2 was to provide additional security to the defendant on the conditional sales contract. It was not designed to and did not change in any material respect the obligations of the parties as contained in exhibit 1.

The undisputed testimony is that before exhibit 1

was signed the agent went over it in all of its details with the plaintiffs, and that it was at this time and by this instrument, and it alone, that the obligations of the parties were created except as to the matter of additional security. On the record of the evidence this must be accepted as true. The plaintiffs contend that the transaction was made under oral agreement entered into on November 27, 1958, but clearly on that date there were only negotiations which preceded the contract as it appears in exhibit 1. It is this instrument that the plaintiffs contend is void and entitles them to the relief they seek in this action.

The details of the exhibit which it is deemed necessary to set out herein are as follows:

| | |
|---|---|
| Price (if this were a cash sale) | $5,895.00 |
| Down payment | 885.00 |
| Unpaid balance | $5,010.00 |
| Insurance premium | 334.40 |
| Official fees | 10.00 |
| Principal balance | $5,354.40 |
| Finance charge | 1,924.04 |
| Time balance | $7,278.44 |
| 59 monthly installments each | $110.00 |
| Final payment in 60th month | $788.44 |
| Time sale price | $8,163.44 |

On the face of this instrument, as is apparent, a cash sale price of $5,895 is set out, also a time sale price of $8,163.44. It appears further that at the time the instrument was executed on the basis of the named cash sale price, the plaintiffs became obligated under the terms of the instrument, if it is valid, to the defendant in the amount of $7,278.44 as a time sale balance on a time sale price of $8,163.44.

The plaintiffs contend that this was not a valid and binding time sale but on the contrary it was in truth a

loan in violation of the terms of the Installment Loan Act. As a loan payable in installments, the contention is that the amount which the plaintiffs became obligated to pay by exhibit 1 in excess of $5,354.40 amounted to interest at a greater rate than was allowable under the Installment Loan Act, that the final payment was substantially greater in amount than the preceding installments, and that the period over which payments were to be made exceeded the period permitted. Further it is contended that this being a loan, the defendant was required under law to deliver a statement of insurance procured by it and, within 15 days, to deliver to plaintiffs an executed copy of the insurance policy or certificate, which it failed to do.

It is pointed out here that the defendant is not a licensee and entitled to make loans under the Installment Loan Act. It follows that if the position of the plaintiffs is to be sustained it must be done on the theory that what was done in this instance by a nonlicensee in violation of the Installment Loan Act was as much a violation of the act as if it had been done by a licensee. This court has held that by a violation of the terms of the act a nonlicensee is subject to the same burdens as those of a licensee. In Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122, it was said: "An installment loan in excess of $1,000 wherein an interest rate in excess of 9 percent per annum is contracted for, which would be void if made by a licensee under the installment loan law, is void and the lender shall have no right to collect or receive any principal or collect any interest on such loan." See, also, State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; Thompson v. Commercial Credit Equipment Corp., 169 Neb. 377, 99 N. W. 2d 761; Robb v. Central Credit Corp., 169 Neb. 505, 100 N. W. 2d 57.

The defendant seeks in its brief to distinguish this case from the case of Powell v. Edwards, *supra*, which case, as does the one here, involved a sale made by a

dealer not engaged in making loans and not licensed to do so under the installment loan laws. It is not capable of the attempted distinction. The two transactions in all material matters were alike. The only difference at all between the two is that in that case the formula on which the transaction was closed was obtained by the dealer from a licensee whereas the source of the one used by the defendant in this case was not disclosed.

In the light of the pronouncement in Powell v. Edwards, *supra*, and section 45-138, R. R. S. 1943, neither a licensee nor a nonlicensee may contract for or receive a greater rate of interest than 9 percent per annum on any loan in excess of $3,000. If either does so he shall have no right to collect principal or interest.

The question for first consideration is that of whether this transaction was, within the meaning of law, what amounted to an installment loan or was, within the true meaning of the law, a time sale transaction.

An essential of a valid time sale price is a price agreed upon between the parties where the buyer is actually informed of and has at the time the sale is made an opportunity to choose between a cash and a time sale price. See, Powell v. Edwards, *supra*; McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1; McNish v. Grand Island Finance Co., 164 Neb. 543, 83 N. W. 2d 13; Thompson v. Commercial Credit Equipment Corp., *supra*; Commonwealth Co. v. Fauver, 169 Neb. 795, 101 N. W. 2d 150.

It is also true that a time sale made in good faith at a price in excess of a cash price, even though the difference exceeds lawful interest for a loan, may not be regarded as invalid as being tainted with usury. See, Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429; Powell v. Edwards, *supra*; State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; McNish v. Grand Island Finance Co., *supra*; Thompson v. Commercial Credit Equipment Corp., *supra*; Robb v. Central Credit Corp., *supra*; Commonwealth Co. v. Fauver, *supra*.

It is of course true that the form of the transaction as it is disclosed by the record may properly be considered in determining its true character. It is also true that it becomes necessary to look beyond the form to the substance to ascertain whether or not there was a bona fide time sale. The true intent must control. In dealing with this question it was said in McNish v. General Credit Corp., *supra:* "In cases of this character courts will look through the form to the substance of the transaction in order to determine whether there was a bona fide time sale or a loan." See, also, State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; Restatement, Contracts, § 529, p. 1029; State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19.

In examining the record in the light of these rules and principles, analysis of exhibit 1, the instrument on which the sale was made and the details of which have already been set out herein, discloses that a cash sale price was named. That price was $5,895. It also discloses a named time sale price of $8,163.44. This instrument discloses that $885 was allowed against the cash price leaving the plaintiffs owing the defendant a balance of $5,010. To this was added $334.40 for insurance and $10 for official fees, making a total owing of $5,354.40. To this was added $1,924.04, which was in terms designated "Finance Charge." The total of the obligation thus became $7,278.44. This was designated as "Time balance owed." The last line of the analysis on the face of exhibit 1 stated that the time sale price was $8,163.44. This was arrived at by addition of the amount of the original allowance on the cash price of $885 to the designated time balance of $7,278.44. This time balance was payable over a period of 5 years in 59 monthly payments of $110 each and a final payment of $788.44.

Upon the true character of this item of $1,924.04 de-

pends the question of whether or not this transaction was in a valid sense a time sale and lawful. If this had been in the true sense an addition to a disclosed cash sale price and the plaintiffs had been so apprised, it could well be said that involved here was a valid time sale.

The fact however is, as disclosed by the record, that this was not true. The exhibit itself discloses that it was a finance charge on an unpaid balance of $5,354.40. It amounted on its face to interest on a forbearance for a period of 5 years. In law it amounted to interest on a loan. See Powell v. Edwards, *supra.*

In addition to what was apparent from the face of the instrument itself the testimony on behalf of the defendant discloses that the finance charge was made on the basis of 7 percent interest a year on $5,354.40 for a period of 5 years, which amounted to $1,874.04, to which was added $50 making the total of $1,924.04. The $50 is not explained by the defendant. The plaintiffs' evidence indicates that it was a charge for refinancing the balance remaining unpaid at the end of 5 years.

The conclusion that this was an interest charge and was so regarded by the parties and not the difference between a cash price and a time sale price is inescapable.

It is further true that this transaction amounted to an installment loan with a rate of interest which rendered it void. Section 45-138, R. R. S. 1943, the statute in force at the date of the transaction and which controls here, provides in part: "No licensee shall directly or indirectly charge, contract for, or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part of all of any aggregate indebtedness of the same person, in excess of three thousand dollars." That which appears as "any part of all" by error in publication is erroneous. As enacted it was "any part or all."

The indebtedness, as has been made clear, was in excess of $3,000 and when considered in its true light,

although the computation was made on an announced basis of 7 percent, the rate in practice was far in excess of 9 percent. The rule which makes this evident was stated in the case of Mills v. Saunders, 4 Neb. 190, as follows: "Partial payments made upon a debt drawing interest should be first applied in payment of the interest, and afterwards to the reduction of the principal." See, also, Davis v. Neligh, 7 Neb. 78; State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. Here there was no deduction of interest on the original amount of the indebtedness notwithstanding a monthly reduction of principal over a period of 59 months.

The transaction, which must be treated as a loan, was void for the reason that the rate of interest was greater than the rate allowed by law.

It was void for the further reason that the payments exacted extended over a greater period than was permitted by law. Section 45-138, R. R. S. 1943, contains the following: "No licensee shall enter into any contract of loan, * * * under which the borrower agrees to make any payment of principal more than thirty-six calendar months from the date of making such contract, * * * if such contract is not secured by a bona fide duly recorded mortgage on real estate owned by the borrower, or under which the borrower agrees to make payment of principal more than thirty-six calendar months from the date of making such contract, if the contract of loan is secured by a bona fide duly recorded mortgage on real estate owned by the borrower." The principal payments on this transaction extended beyond 36 months contrary to the provision.

There is still another reason why it is contended that the transaction was void. Section 45-138, R. R. S. 1943, further provides: "Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is

substantially greater in amount than any preceding installment." Provision is made in this section of the statute for exceptions in the light of designated conditions. No such designated conditions have in this instance become apparent. As has already been pointed out payment was to be made by 59 installments of $110 each and 1, which the parties have referred to as a balloon payment, for $788.44.

This as well as all other violations of the section rendered the transaction void. The final sentence of the section is the following: "Any contract of loan made in violation of this section, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges on such loan."

In their petition the plaintiffs have asserted two other grounds for the relief claimed. One of these is that the defendant failed to deliver a statement of insurance procured and the other is that the defendant failed, within 15 days after making the loan, to deliver an executed copy of the insurance policy or certificate obtained to the plaintiffs.

The evidence in this area does not appear sufficient to sustain the allegations of the petition. Whether or not the trial court sustained these allegations does not appear from the findings and judgment. The court without elaboration found that the transaction was a loan and that it was usurious and void, and adjudicated accordingly. This of course cannot militate against the judgment rendered in view of the holding of invalidity on the other grounds.

One of the two assignments of error to which reference has hereinbefore been made complains that plaintiffs were erroneously permitted to testify orally that written contracts were executed other than on the date which they bear. It is true that such testimony was received. Assuming that this testimony was inadmissible, insofar as the decision in the case is concerned, it was

without prejudice. It is clear from what has been said herein that the conclusion reached is not in anywise based thereon. The conclusion is based on the assumption that the exhibits, as the defendant contends, correctly reflect the date or dates of the transaction involved.

The other assignment of error charges that the finding of fact as to the amount paid to defendant by the plaintiffs is erroneous and excessive. This the plaintiffs concede. Judgment was rendered on account of payments made in the amount of $2,200. Only $1,980 was actually paid. The judgment must be reduced in the amount of $220.

The judgment of the district court is therefore affirmed in all respects except that the money judgment in favor of plaintiffs is modified by reduction from $2,200 to $1,980.

AFFIRMED AS MODIFIED.