WILLIAM F. ELDER ET AL., APPELLANTS, V. THOMAS C. DOERR, APPELLEE.

122 N. W. 2d 528

Filed June 28, 1963. No. 35484.

Seymour L. Smith, for appellants.

Clarence A. Davis, for appellee.

Lane, Baird, Pedersen & Haggart, amici curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Plaintiffs bring this action for a declaratory judgment to determine their rights in a retail motor vehicle installment contract and for injunctive relief. Issues were made up by the pleadings and a trial was had. The trial court found for the defendant and the plaintiffs have appealed.

The evidence discloses that on March 31, 1962, plaintiffs purchased a 1959 automobile from an Omaha dealer under a retail installment contract which was subsequently assigned to the defendant. The dealer informed the plaintiffs that the cash sale price of the automobile was $2,095. The trade-in value of their old car and the cash down payment amounted to $660, leaving an amount due of $1,435 if the car was sold for the cash price. The dealer advised plaintiffs that the time sale price of the automobile was $2,352.96 and, after crediting the $660 thereon, the unpaid balance of the time price would be $1,692.96, which could be paid off in 24 monthly installments of $70.54 each. The plaintiffs accepted the time sale offer. The parties executed a retail motor vehicle installment contract in accordance therewith which is the subject of this action.

It was stipulated by the parties that the time sale differential is $257.96 and that this amount is less than the maximum time price differential authorized by the Nebraska Installment Sales Act (sections 45-301 to 45-312, R. R. S. 1943). It is also stipulated that the amount of $257.96 is in excess of an amount equal to 9 percent per annum on the unpaid balance if each payment is made in the manner and at the time scheduled. It is further stipulated that the sale and contract complied

with all the requirements of the Nebraska Installment Sales Act.

The plaintiffs allege that the installment contract is void in that it violates the Nebraska Installment Loan Act (sections 45-114 to 45-158, R. R. S. 1943); that the Nebraska Installment Sales Act is unconstitutional in that it violates Article I, section 16, and Article III, section 18, of the Nebraska Constitution; that the plaintiffs have notified the defendant they will make no further payments under the installment contract; and that defendant has threatened to repossess plaintiffs' automobile. A copy of the contract is attached to and made a part of the petition. Plaintiffs pray that the Nebraska Installment Sales Act be declared unconstitutional; that the contract be adjudged void and canceled; and that the defendant be enjoined from attempting to enforce the contract. The defendant alleges that the Nebraska Installment Sales Act is constitutional, but even if it is not, the transaction was a valid time sale and not in violation of the Nebraska Installment Loan Act.

The plaintiffs allege that the installment contract is void because it violates the Nebraska Installment Loan Act. Defendant contends the installment contract is valid in that it complies with all the requirements of the Nebraska Installment Sales Act and, further, that it is a time sale made in good faith and is valid whether or not the Nebraska Installment Sales Act is constitutional. The first question to be determined is whether or not the installment contract is valid irrespective of the constitutionality of the Nebraska Installment Sales Act.

In the determination of this case we must give consideration to the right of property and its incidents as guaranteed by Article I, sections 1 and 25, of our state Constitution. This court has held that these provisions give to every citizen the right of acquiring the absolute and unqualified title to every species of property with all rights incidental thereto, including the right

to dispose of such property in such innocent manner as he pleases and to sell it at such a price as he can obtain for it in fair barter. State ex rel. English v. Ruback, 135 Neb. 335, 281 N. W. 607; Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729. See, also, 55 Am. Jur., Usury, § 21, p. 338. The right to engage in a lawful and useful occupation, however, may be subjected to reasonable regulation in the public interest, even though it results in some degree of limitation on the rights of property. In Althaus v. State, 99 Neb. 465, 156 N. W. 1038, this court upheld a legislative act requiring the licensing of money lenders and authorizing licensed money lenders to charge a brokerage fee in excess of the maximum rate of interest authorized by law, and in certain specified cases to charge an examination fee of 50 cents in addition to interest. The licensing of money lenders and the regulation of interest is there held to be within the police power of the state. See, also, Mack Investment Co. v. Dominy, 140 Neb. 709, 1 N. W. 2d 295. But this court has adhered to the principle that the Legislature, under the guise of regulation, may not indulge in arbitrary price fixing, the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly.

Pursuant to this fundamental concept this court has recognized the right of an owner of a motor vehicle to sell it for what he can get for it in fair barter, even thought the whole or a part of the purchase price may be on credit. In a line of cases beginning with Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, to the present time, this court has consistently held that a time sale made in good faith at a price in excess of a cash price, even though the difference between the two prices exceeds the lawful interest for a loan, is not invalid as usurious. We adhere to the fundamental principle that a seller may sell his property for what he can get for it so long as the transaction is a sale and purchase made in good faith. See, Trailmobile, Inc. v.

Hardesty, 173 Neb. 46, 112 N. W. 2d 535; Berg v. Midwest Laundry Equip. Corp., *ante* p. 423, 122 N. W. 2d 250.

Difficulties arise in this class of cases when the transaction appears to be a time sale made in good faith but is in fact a loan at a usurious rate of interest. Many see no practical difference in a time sale and a cash sale with interest on the portion on which credit is extended. It is the result of the fact that a purchaser may desire to pay a larger sum to gain time and a vendor may prefer payment of a specifed sum in cash to a larger amount in expectancy. The courts are confronted with the problem of maintaining the fundamental right of property on the one hand and the law against usury on the other. The general rule is that a sale of property for a price fixed by the seller and accepted by the purchaser, if made in good faith, does not involve any question of usury. It is only when it is shown that such a transaction is a scheme, or artifice, to avoid the usury laws that the courts will look through form and determine the real nature of the transaction.

Since the true nature of such a financial transaction can only be determined by the evidence in each particular case, uncertainty has arisen in a field where certainty is desired. This court has consistently held that an installment time sale which is in fact a loan is void if it is made in violation of the Nebraska Installment Loan Act. It is a question of fact as to whether or not a particular transaction is a time sale made in good faith or the financing of the unpaid balance of a cash purchase price. Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122; Trailmobile, Inc. v. Hardesty, *supra*. In considering whether or not such a transaction is a time sale made in good faith or a loan, the court will look through form and examine its substance. State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. A transaction is not a valid time sale made in good faith unless the seller informs the buyer, at the time of the

sale, of the cash and time sale prices and gives the buyer the opportunity to choose the one he will accept. Wood v. Commonwealth Trailer Sales, Inc., 172 Neb. 494, 110 N. W. 2d 87. The fact that a purchaser has full knowledge and accepts the terms of the proffered sale is not a defense to a charge of usury. The lender alone is the violator of the law, and against him alone are its penalties exacted. Robb v. Central Credit Corp., 169 Neb. 505, 100 N. W. 2d 57.

The defendant contends that the burden is upon the plaintiffs to show that the transaction was not a time sale made in good faith and was in fact a loan. The stipulation of facts upon which the case was tried is silent on this question and would ordinarily require a holding that the installment contract was a valid time sale made in good faith. But the parties stipulated that the installment contract was made in conformity with all the requirements of the Nebraska Installment Sales Act. If the latter act provides for interest in excess of the maximum that a nonlicensee could charge under the Nebraska Installment Loan Act, it would be a violation of that act if the Nebraska Installment Sales Act is unconstitutional. The plaintiffs rely solely on the provisons of the Nebraska Installment Sales Act itself, with which full compliance is stipulated, to show the usurious nature of the installment contract. The parties recognized this fact when they stipulated that an actual and justiciable controversy exists with reference to the constitutionality of the Nebraska Installment Sales Act. It stands to reason that the time differential could not be an interest charge under the Nebraska Installment Sales Act, and something different when applied to the Nebraska Installment Loan Act. We think the crux of the case is whether or not the time differential provided for in the Nebraska Installment Sales Act was in fact an interest charge for the loan of money or the forbearance of a debt. We therefore reach the question: Was the price differential permitted by the Nebraska

Installment Sales Act in fact an interest charge?

The purpose of the Nebraska Installment Sales Act is twofold, first, to insure a reasonable return to money lenders on installment sales contracts where, admittedly, a reasonable return in all cases cannot be had within existing usury statutes and, second, to protect retail installment buyers from exorbitant gouging by greedy money lenders. Traditionally, time sales have not been held to be within the usury acts on the theory that the increase in the time sale price differs from interest on a loan. The Legislature undoubtedly recognized that the exclusion of a time sales contract from the operation of usury statutes left consumers without protection against exorbitant finance charges.

By section 45-303, R. R. S. 1943, of the Nebraska Installment Sales Act, it is provided that each retail installment contract shall be in writing, shall be signed by both the buyer and the seller, and shall set forth the cash sale price, the time sales price, and the time price differential, among others. By section 45-305, R. R. S. 1943, of the act, it is provided that the time price differential shall not exceed the following schedule:

"CLASS 1. Any new motor vehicle designated by the manufacturer by a year model not earlier than the year in which the sale is made—eight dollars per one hundred dollars per year.

"CLASS 2. Any new motor vehicle not in Class 1 and any used motor vehicle designated by the manufacturer by a year model of the same or not more than two years prior to the year in which the sale is made—ten dollars per one hundred dollars per year.

"CLASS 3. Any used motor vehicle not in Class 2 and designated by the manufacturer by a year model not more than four years prior to the year in which the sale is made—thirteen dollars per one hundred dollars per year.

"CLASS 4. Any used motor vehicle not in Class 2 or Class 3 and designated by the manufacturer by a

year model more than four years prior to the year in which the sale is made—fifteen dollars per one hundred dollars per year."

The general statute fixing maximum interest rates in this state provides: "Any rate of interest which may be agreed upon, not exceeding nine dollars per year upon one hundred dollars, shall be valid upon any loan or forbearance of money, goods or things in action * * *." § 45-101, R. S. Supp., 1961. See, also, Peters Trust Co. v. Hecht, 118 Neb. 390, 224 N. W. 866.

The Nebraska Installment Sales Act provides that the cash sale price may include, if itemized, any taxes, registration, certificate of title and license fees and costs for accessories and for the installation, delivery or servicing of goods. The basic time price is defined as the cash sale price of the goods, plus the charge for insurance, less the down payment made in money or goods. The price differential means the amount, as limited by the statute, to be added to the basic time price. The time sale price is defined as the total of the cash sale price of the goods, plus the amount for insurance, and the time price differential. § 45-302, R. R. S. 1943. No charge for insurance is involved in the present case.

The pertinent provision is the one providing for the addition of the time price differential to the time sale price. This differential is the amount permitted to be added by the schedule provided in section 45-305, R. R. S. 1943, which we have hereinbefore quoted in part. As an example, it is provided in Class 2 of the schedule that the time differential shall not exceed "ten dollars per one hunderd dollars per year." This provision does not specify the basis for the allowance of this amount as a part of the time sale price. It is, however, similar to the language quoted in the general statute fixing the maximum rate of interest that may be charged, to wit, "not exceeding nine dollars per year upon one hundred dollars." The only logical conclusion that can be reached is that the price differential was for the for-

bearance of money and is, in fact, an interest charge. Since it is stipulated that the amount of the differential is in excess of an amount equal to nine percent per annum simple interest on the scheduled unpaid balances if each payment were made at the time scheduled, it would appear to be in violation of the Nebraska Installment Loan Act. But the defendant contends that the installment contract meets all the requirements of the Nebraska Installment Sales Act and is therefore valid and enforcible irrespective of the provisions of the Nebraska Installment Loan Act. For us to so hold would permit a usurious loan under the Nebraska Installment Loan Act to become valid by the simple expedient of complying with form irrespective of substance. In any event, this gives rise to the question whether or not compliance with the Nebraska Installment Sales Act has the effect of defeating a claim of usury under the Nebraska Installment Loan Act. If the Nebraska Installment Sales Act is unconstitutional, such an issue is not available to the defendant.

The fixing of interest rates by the Legislature is a classic example of the exercise of the police power in the public interest. It is a power that has been traditionally exercised by the Legislatures of the several states and we shall not at this time undertake to set forth authorities for legislative action in this field. But if, as we hold, the Legislature has fixed interest rates by the schedule contained in section 45-305, R. R. S. 1943, we cannot say it did not act within its legislative power since it has the authority to fix interest rates in the exercise of the police power. Althaus v. State, 99 Neb. 465, 156 N. W. 1038. The question is whether or not it exercised its power within constitutional limitations.

Article III, section 18, of the Constitution, provides in part: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Regulating the interest on money." Under this section of the Constitution, the Legislature may fix the rates

of interest that may be charged for the hire of money or the forebearance of debt in installment sale contracts, if the classification is reasonable and has relation to the public interest. That a reasonable classification is required in this type of case is made clear in Althaus v. State, 99 Neb. 465, 156 N. W. 1038, wherein it is said: "The law assailed regulates the interest chargeable by two classes—unlicensed lenders of money limited to 10 per cent. per annum, and licensed lenders authorized to make an additional charge, called a 'brokerage fee,' not exceeding one-tenth of the money actually lent and, in exceptional cases, to charge an examination fee of 50 cents. The latter class is open to all who comply with the terms of the statute. One class of borrowers may be required to pay more for their loans than others, but this condition already existed and was not created by legislation. The lawmakers recognized a class of borrowers from whom exorbitant rates of interest had been exacted under existing conditions and attempted to afford them some measure of protection. Those making such loans are required to obtain a license. Their methods of doing business are regulated. The act makes no discrimination against any class of borrowers. It is not unconstitutional as being a 'local or special law * * * regulating the interest on money.' The better rule is that the classification is neither unreasonable nor arbitrary. It is also clear that the act does not deny the equal protection of the laws."

In the last-cited case the classification of all lenders of money in the licensed and unlicensed classes for the purpose of fixing and regulating interest rates was held to be a reasonable classification for that purpose. In the instant case the classification was further broken down into classes of automobiles based on their ages. This furnishes no reasonable classification for the purpose of regulating interest. See, also, Althaus v. State, 94 Neb. 780, 144 N. W. 799. While it is true that motor vehicles may constitute a reasonable class for some pur-

poses as a basis for legislation in the public interest, it does not permit such class to be broken into four separate classes to provide a different rate of interest for each on credit extended. The age of a motor vehicle affords no reasonable classification for the fixing of maximum rates of interest that may be charged on installment contracts given for the unpaid portion of the purchase price. The quoted constitutional provision contemplates that a legislative act fixing maximum rates of interest shall operate uniformly upon a class of persons or property and that such class shall be reasonable and in the public interest. Allan v. Kennard, 81 Neb. 289, 116 N. W. 63; Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317; Creigh v. Larsen, 171 Neb. 317, 106 N. W. 2d 187.

It is here contended that the fixing of maximum rates of interest for installment sales of automobiles at one amount and for different rates on installment contract sales of all other kinds of personal property constitutes an improper classification for the purpose of fixing maximum rates of interest. It is contended that the lender of money on automobiles under the Nebraska Installment Sales Act accords such lender a special privilege and is, in fact, a special law. We fail to see any reasonable basis for classifying personal property for the purpose of fixing interest rates so that an installment contract on one species of personal property would be lawful and on a similar species of property would be usurious. This question was decided in Althaus v. State, 94 Neb. 780, 144 N. W. 799, in which we said: "A lender who charges extortionate interest and accepts security on the chattels enumerated by the legislature may be punished. Another lender who makes a loan on identical terms, except that he includes in his chattel mortgage an article not enumerated in the act, but similar to those mentioned therein, goes free. If the avarice and greed of those who thrive on the poverty or the misfortune of the owners of 'household goods, musical instruments, wearing apparel, jewelry, diamonds, or

by a deposit of personal property, or by an assignment of wages, credits or choses in action,' are to be wisely and justly curbed by law, as such abominations should be, why should not the law apply also to those who lend money on other chattels of a similar nature? * * * In the eye of the law, why should the owner of household goods, which are being moved from one tenement to another, be protected by statute from the extortion of the lender on chattel security, while the owner of the cart in which such goods are moved is left to the unpunishable avarice of the chattel lienor? * * * In a law regulating the interest on money are the classifications made in the act permitted by the constitution? The answer to these questions is that there is no 'substantial difference of situation or circumstance that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified.' Reasoning or refinement which would harmonize such classifications with the constitution would make of the supreme law, of the act of the legislature and of the judgment of the court a farce or a delusion. * * * The classifications are on their face unreasonable and arbitrary. The act is the kind of legislation the constitution was intended to prohibit." See, also, State ex rel. Sorensen v. First State Bank, 122 Neb. 109, 239 N. W. 646.

The constitutional provision inhibiting special legislation in regulating the interest on money means that maximum interest rates shall be made by general law on a reasonable classification of persons or things, and to prevent legislation affecting diversely property of like character and persons similarly situated. The Nebraska Installment Sales Act is not in compliance with this constitutional concept and it is void for that reason. State ex rel. Dawson County v. Farmers & Merchants Irr. Co., 59 Neb. 1, 80 N. W. 52.

We conclude that the classification of property in the Nebraska Installment Sales Act for the purpose of fixing maximum rates of interest on installment sales con-

tracts given in payment of the unpaid purchase price is unreasonable, arbitrary, and capricious, and in violation of Article III, section 18, Constitution of Nebraska, prohibiting special legislation. The act does not operate uniformly on the persons and property in the class sought to be regulated. The classification of persons and property for the purpose of fixing interest rates on installment loans thereon is unreasonable, arbitrary, and void. The Nebraska Installment Sales Act is in violation of Article III, section 18, Constitution of Nebraska, and is of no force and effect.

Since the seller of the automobile involved in the transaction, and who appears on the installment sales contract as the seller, is not a licensee, the maximum rate of interest that could be charged is 9 percent per annum. The parties having stipulated that the time differential, which is in fact interest, exceeds that amount, the installment sales contract is in fact a loan and in violation of the Nebraska Installment Loan Act and void.

The judgment of the trial court is reversed and the cause remanded to the district court with instructions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

I respectfully dissent from the holding of the majority in this case.

The pleadings and the evidence in this case present a question as to the validity of a retail installment contract for the sale of an automobile. The constitutionality of the Installment Sales Act is not an issue in the case unless it is necessary to a decision of the case. The conclusion of a pleader alone cannot raise such an issue.

The Installment Sales Act was intended to regulate valid time sales. The act is not applicable to transactions which in fact are loans made in violation of the Installment Loan Act. Consequently, if the retail installment contract involved in this case was not a valid

time sale, then the Installment Sales Act is not involved and its constitutionality cannot be an issue in this case.

If the retail installment contract involved in this case is in fact a time sale made in good faith, then it is valid under Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, which, apparently, is still the law in this state. In that event, the constitutionality of the Installment Sales Act cannot be an issue because the contract is valid without regard to the statute.

In any event, the plaintiffs cannot challenge the constitutionality of the Installment Sales Act because their rights are not affected adversely in any way by the act. The Installment Sales Act imposes controls and limitations upon the seller and creates rights and benefits for the purchaser. In the absence of the statute there is no regulation of time sales made in good faith.

Generally, a statute will not be declared unconstitutional at the suit of a party whose rights are not affected injuriously by the operation of the statute. Johnson Fruit Co. v. Story, 171 Neb. 310, 106 N. W. 2d 182; Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622; State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N. W. 2d 683; Erickson v. Nine Mile Irr. Dist., 109 Neb. 189, 190 N. W. 573; Urbach v. City of Omaha, 101 Neb. 314, 163 N. W. 307, L. R. A. 1917E 1163; Peterson v. Anderson, 100 Neb. 149, 158 N. W. 1055; State ex rel. Ridgell v. Hall, on rehearing, 99 Neb. 95, 156 N. W. 16; Cram v. Chicago, B. & Q. Ry. Co., 85 Neb. 586, 123 N. W. 1045, 26 L. R. A. N. S. 1022; State v. Brandt, 83 Neb. 656, 120 N. W. 196.

For these reasons I dissent from the holding of the majority in this case.