**McMASTER v. ROBINSON'S WOMEN'S APPAREL, Inc., et al.**

**No. 140.**

District Court, D. Nebraska, Lincoln Division.

May 21, 1942.

Homer L. Kyle, of Lincoln, Neb., for plaintiff.

Kennedy, Holland, DeLacy & Svoboda, of Omaha, Neb., and Lester L. Dunn, of Lincoln, Neb., for Garrick Const. Co.

DELEHANT, District Judge.

This action was originally instituted in the District Court of Lancaster County, Nebraska, by the plaintiff, a resident and citizen of Nebraska, against the defendant corporations, incorporated under the laws of Michigan and Illinois, respectively, and was removed to this court upon petition of the defendants on the ground of diversity of citizenship.

Before removal, the defendant, Garrick Construction Company (hereinafter, for brevity, referred to as "the company") filed in the state court, under the Nebraska practice, a special appearance questioning the court's jurisdiction over its person and moving for an order quashing service of summons upon it. That special appearance tenders the sole issue presently before the court.

The petition seeks damages for personal injuries alleged to have been sustained by the plaintiff in an accident on the defendant Robinson's Women's Apparel's premises involving his falling against certain objects, in proximate consequence of alleged negligence of the defendants in the course of the repairing and remodeling by the company of a store building in Lincoln, Lancaster County, Nebraska (occupied under lease from the owner by its co-defendant). In pursuance of a contract between the two defendants for such repairing and remodeling work.

The company was not and is not domesticated in Nebraska, and had not and has not appointed any agent for the receipt of process within this state, but was served with summons herein by delivery of a copy of the summons to the Deputy State Auditor of Nebraska in the absence of the State Auditor in an effort to comply with Sec. 24-1201, C.S.Neb.1929. To that service the company objects, not by reason of any claimed irregularity in its accomplishment, but on the broad ground that the method of obtaining service in question is not available against it, first, because, as it claims, its operations in Nebraska have never been sufficient to constitute "engaging in business" within the state; and secondly, because it was not engaged in business in Nebraska

at the time of the filing of this suit and the attempted service of process herein, and had not been so engaged for some time theretofore.

██ The statutory technique for process provided in Sec. 24-1201, is available in Nebraska as against a foreign corporation which enters the state of Nebraska and transacts business therein without appointing any resident agent upon whom service of process may be made. And whatever doubts may formerly have been allowable, it is now certain that any foreign corporation thus transacting business in Nebraska without appointing a resident agent for process is amenable to process in the manner employed in this instance, in actions arising out of the transaction of such business in Nebraska even though suit may not be started or process served until after the corporation has withdrawn from the state. Yoder v. Nu-Enamel Corporation, 140 Neb. 585, 300 N.W. 840.

██ The sole question, therefore, is whether the company was engaged in business in Nebraska when the alleged cause of action arose. If that question be answered in the affirmative, its failure to continue in business in the state is no obstacle to service. The relevant facts will be summarized from the petition and the affidavits filed as a showing and countershowing upon the special appearance.

The general nature of the company's business is the erection and remodeling of buildings. Though its corporate domicile is in Illinois, it "performs jobs and transacts business" (in the words of its comptroller and treasurer) both within and outside the state of Illinois. Its only Nebraska operations up to and including January 13, 1942, when its comptroller and auditor made an affidavit in support of its objections to process were: (a) remodeling the store of its co-defendant, in Lincoln, pursuant to contract dated September 28, 1940, in the course of which it commenced work October 4, 1940, finished its work about November 26, 1940, and received final payment February 10, 1941; and (b) remodeling of two stores in Omaha pursuant to a contract made on or about January 15, 1940, in the course of which it commenced work in February of 1940 and continued operations till April of 1940. Both of these remodeling contracts were signed and delivered in Illinois. In an affidavit in support of the special appearance, the company's comptroller and treas-

urer also states that the company has never at any time maintained an office or place of business in Nebraska. In a countershowing by affidavit, the plaintiff makes it to appear that in the course of its remodeling work for its co-defendant, the company purchased in Nebraska from various Nebraska business houses, plate glass and store front construction materials and other materials and supplies, which it used in the performance of its contract, entered into numerous contracts with local Nebraska dealers for such materials and supplies and employed local labor for its purposes. Generally, it appears, in the instance involved, to have proceeded in the ordinary course of a building contractor engaged in construction operations.

Thus operating, was the company transacting business in Nebraska within the meaning of the applicable act, at the time of the plaintiff's alleged injury? This court is satisfied that the question must be answered affirmatively.

The company's counsel insist that Yoder v. Nu-Enamel Corporation, supra, is not in point here as a test of doing business. Perhaps it is not conclusive, for there is no precise identity between the cases; but it is, at least, instructive. Here the company's Nebraska operations were precisely those which it was organized to conduct, that is, building construction and remodeling. In the Yoder case, the transactions in Nebraska by the foreign corporation were less clearly within the course of its usual business, for they consisted of the operation, for a short while, and the eventual sale, by a non-resident corporate manufacturer and distributor of paint products, of three local retail stores in Omaha which the manufacturer and distributor had acquired not in its normal operations but rather in liquidation of a debt. True, over the counter sales in a retail store very clearly connote the transaction of business; but so also, it seems, do the partial demolition and reconstruction of a building, over the period of two months and the employment therein of labor hired, and materials, equipment, and supplies purchased therefor, especially when they are done by a corporation organized and existing for that very purpose, and prosecuting its business both in and beyond the state of its incorporation (see affidavit of its comptroller, supra). Granting, therefore, that the particulars involved in the Yoder case were not identical with those now undergoing

analysis, the court might well conclude that the operations in the Yoder action established "transacting business" even less clearly than those of the company.

In their excellent brief upon the issue, counsel for the company have urged with force, and supported with authorities, the contention that a single isolated act of a foreign corporation within a state other than the one of its domicile does not constitute doing business in the alien state. Examination has been carefully made of the citations, both textual and judicially expressed. It is to be noted that they refer chiefly to cases where the corporation under scrutiny seeks recovery from one who has contracted with and incurred an obligation to, it, in the transaction involved, and, upon being sued, endeavors to evade the discharge of a just liability upon the purely technical ground of the plaintiff's failure to domesticate; in the course of the consideration of which the right of the state to penalize for failure to qualify is necessarily considered. The few cases cited by the company, involving process against a corporation thus operating, hardly seem to the court to be factually comparable to this one.

Now, a distinction is made—and with good reason—in the application of the test of "transacting business", where the issue is either, directly, the power of the state to impose upon a foreign corporation a penalty for failure to qualify, or the right of the foreign corporation to recover a debt honestly contracted from one who has dealt with it, on the one hand; and the amenability of the foreign corporation to process in a suit arising out of its intrusion into the state on the other hand. The distinction is founded upon sound reason and considerations of justice. The penalties against a foreign corporation for the transaction of business within a state without qualification are admittedly harsh, and admonish the court to a reasonably indulgent attitude towards the corporation upon which the state invokes their imposition. And an equal indulgence may be invoked to sustain the enforcement of an obligation against a debtor whose defense in the face of suit is the negation of corporate power in the entity whose property he has not hesitated recently to accept, assuming that power.

But in cases like the one before the court, the considerations compelling indulgent application of the test are wholly absent. Prescinding utterly from any inference respecting the merits of the petition, it alleges the tortious injury of the plaintiff by the company, in and as a direct result of, its operations in Nebraska. To which, in effect, the company retorts that it was not here as a corporation. The acknowledged facts, the statute under review and every consideration of simple justice force the court to the denial of that contention.

■■ In Liquid Veneer Corporation v. Smuckler, 9 Cir., 90 F.2d 196, 202, the court recognizes the distinction here suggested, saying: "The business transacted in the state by a foreign corporation to permit service must be such as to warrant the inference that the corporation is present and its activity must be more or less continuous. A foreign corporation may be doing business in a state to bring it within the jurisdiction of the court and amenable to its process and yet not obtain a status to be regulated by a state statute or bring it within the statutory provision requiring a license for operation of such foreign corporation. * * * Doing business having relation to interstate commerce is distinguished from doing business making the foreign corporation amenable to service of process."

While some of the authorities cited by the writer of that opinion may seem to give it rather frail support, this court considers the distinction suggested to be well taken.

In Tomson v. Iowa S. T. M. Ass'n, 88 Neb. 399, 129 N.W. 529, touching amenability to process, the attitude of the Supreme Court of Nebraska is thus reflected in the syllabus (at a time, incidentally, when that court placed particular emphasis upon its syllabi): "A single transaction by a foreign corporation may constitute a doing of business in this state within the meaning of the statutes of the state making certain requirements of foreign corporations conditions precedent to their doing business in the state, where such transaction is a part of the ordinary business of such corporation and indicates a purpose to carry on a substantial part of its dealings here."

The following persuasive discussion is selected from the opinion in Nickerson v. Warren City Tank & Boiler Company, D.C., 223 F. 843, 847, as peculiarly applicable to the issue before this court: "The defendant company was incorporated for and engaged in the business of constructing and erecting oil tanks. Its business is large and territorially widely distributed. When prac-

ticable, the tanks were constructed at its main works in the state of its incorporation, and when to be erected in another state were there shipped in charge of its employés, who erected them in the place of their location; the man in charge there employing such labor as might be required. The tank might be shipped in its entirety or in sections, according to size and other circumstances of convenience, and its construction completed at the place of erection. The defendant had made a contract to construct and erect a tank within this district. It was here in the performance of its contract and for the purpose of doing the work it had contracted to do. It was therefore here doing the very thing which it was incorporated to do, and was therefore in the most emphatic practical sense, 'doing business' in this district. It was also here in the sense that by its act the plaintiff was here injured (if it be the fact that he was so injured). Being here, in this double sense of doing here what it could not do if not here, it is difficult to reconcile our minds to the conclusion that it is not here in the sense of being here answerable for the acts which it has here performed."

Without unnecessarily protracting this memorandum by the citation of, and quotation from, authorities, it is noted that similarly vigorous language with like conclusions respecting the consequence of the performance of a single building contract within a state other than that of the corporate domicile is to be found in Muller Mfg. Co. v. First Nat'l Bank of Dothan, 176 Ala. 229, 57 So. 762, and Smythe Co. v. Ft. Worth Glass, etc., Co., 105 Tex. 8, 142 S.W. 1157,

both of which, incidentally, arose from efforts of the offending corporation to collect moneys due upon the contracts, which would invoke in the corporation's favor the more indulgent application of the test of "doing business".

The court in this instance considers that the company can not escape process. At the time of the alleged injury, it was engaged in Nebraska in the very work for which it was organized, which constitutes its general business, and is even reflected in its name. This contract required nearly two months for performance. During the same year, it had been engaged for at least that long a period of time upon a like enterprise in Omaha, with the consequence that for four months of 1940, the defendant had forces of men engaged in building construction work in Nebraska. Its operations required the continuous purchase of materials and equipment and the hiring of labor here and their utilization in the production of its finished product. Its work involved the very type of hazard, for the protection against which the form of process here employed was devised. The plaintiff was allegedly injured in consequence of the negligence of the company in that work. The suit is brought in the county where the cause of action is alleged to have arisen. Under the reasoning of the Yoder case, the company's complete discontinuance of that business before the institution of this suit does not place it beyond the reach of the process of the Nebraska court.

An order is, therefore, being entered, overruling the company's special appearance.