MAURICE BERG ET AL., APPELLANTS AND CROSS-APPELLEES,
v. MIDWEST LAUNDRY EQUIPMENT CORP., A CORPORATION,
APPELLEE AND CROSS-APPELLEE, INDUSTRIAL CREDIT
COMPANY, A CORPORATION, APPELLEE AND
CROSS-APPELLANT.
122 N. W. 2d 250

Filed June 14, 1963. No. 35409.

Ginsburg, Rosenberg & Ginsburg and Norman Krivosha, for appellants.

Young, Denenberg & Mullery, for appellee Midwest Laundry Equipment Corp.

Perry & Perry and James V. Risser, for appellee Industrial Credit Co.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action to declare an alleged retail installment contract void and to recover all payments made under the contract. The plaintiffs, Maurice Berg and June Berg, are husband and wife. The defendants, Midwest Laundry Equipment Corp. and Industrial Credit Company, are corporations.

The trial court found that the contract was a valid installment sale, but that Industrial Credit Company had made certain charges in violation of the Installment Sales Act and assessed a penalty against it. The trial court held that the charges and the amount of the penalty should be deducted from the balance due under the contract and that the plaintiffs should pay the remaining installments due under the contract to Industrial Credit Company.

The plaintiffs' motion for new trial was overruled and the plaintiffs have appealed. The defendant Industrial Credit Company has cross-appealed.

The Midwest Laundry Equipment Corp. is engaged in the sale of laundry equipment which is used in the

operation of coin-operated, self-service laundry stores. Industrial Credit Company is engaged in the sales finance business. It is a Minnesota corporation and its principal place of business is in St. Paul, Minnesota.

The plaintiffs alleged that Industrial Credit Company was engaged in the business of making loans to residents of the State of Nebraska. The plaintiffs attempted to obtain jurisdiction over the person of Industrial Credit Company by having a summons served upon the Secretary of State of the State of Nebraska. Industrial Credit Company filed a special appearance in which it denied that it had been doing business in the State of Nebraska at any time. Thereafter, Industrial Credit Company attempted to preserve its special appearance. For the purpose of this opinion, we assume that it did preserve its special appearance. The trial court overruled the special appearance and Industrial Credit Company has cross-appealed from that ruling.

Before a state can subject a foreign corporation to its jurisdiction, the corporation must have expressly consented to such jurisdiction or it must have done sufficient business in the state to constitute a submission to such jurisdiction. Jurisdiction over a foreign corporation which is actually doing business in Nebraska may be obtained by service of process upon the Secretary of State even though the corporation has not expressly consented to such jurisdiction. § 21-1201, R. R. S. 1943; Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151. It is a question of fact as to whether a foreign corporation is doing business in this state and each case must be decided upon its own facts.

The plaintiffs alleged that Midwest Laundry Equipment Corp. was employed as an agent by Industrial Credit Company for the purpose of soliciting loans to residents of Nebraska. Agency cannot be established by the acts or declarations of the alleged agent, but must be proved by the acts or declarations of the principal. Rodine v. Iowa Home Mutual Cas. Co., 171 Neb.

263, 106 N. W. 2d 391. There is no evidence of any act or declaration of Industrial Credit Company to establish the agency alleged.

There is evidence that Industrial Credit Company has purchased 71 retail installment contracts from Midwest Laundry Equipment Corp. and that 18 of these contracts were executed by residents of Nebraska. What evidence there is as to how these contracts were purchased shows that contracts were offered to Industrial Credit Company by Midwest Laundry Equipment Corp. at St. Paul, Minnesota; that Industrial Credit Company was not obligated to purchase any of the contracts offered to it; that Industrial Credit Company made its own investigation as to the credit of the purchasers of the equipment; that Industrial Credit Company refused to purchase the contract executed by the plaintiffs when it was first offered to it by Midwest Laundry Equipment Corp.; and that the contract was finally purchased after it had been "rewritten" to show a much larger downpayment to Midwest Laundry Equipment Corp. than was actually made by the plaintiffs.

We conclude that the evidence fails to show that Industrial Credit Company was doing business in Nebraska, and its special appearance should have been sustained. This disposes of the case so far as Industrial Credit Company is concerned.

The remaining questions concern the right of the plaintiffs to recover the amounts paid to Midwest Laundry Equipment Corp. under the contract. That depends upon a determination as to the validity of the contract as between these parties. Since there is no jurisdiction over the person of Industrial Credit Company, no determination can be made as to the validity of the contract as between the plaintiffs and Industrial Credit Company in this action.

A time sale made in good faith is valid in this state, but a transaction which is in fact a loan made in violation of the Installment Loan Act is void. Powell v. Edwards,

162 Neb. 11, 75 N. W. 2d 122. It is a question of fact as to whether a particular transaction is a bona fide time sale or the financing of the balance of a cash purchase price. Trailmobile, Inc. v. Hardesty, 173 Neb. 46, 112 N. W. 2d 535. In determining whether a transaction is a bona fide time sale or a loan, the court will look through the form of the transaction and examine its substance. State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. A transaction is not a valid time sale unless the buyer at the time of the sale was informed of and was given an opportunity to choose between a cash price and a valid time sale price. Wood v. Commonwealth Trailer Sales, Inc., 172 Neb. 494, 110 N. W. 2d 87.

The record shows that the plaintiffs talked with Raymond A. Erlandson, an employee of Midwest Laundry Equipment Corp., in November 1959, at Fargo, North Dakota. The plaintiffs had answered a newspaper advertisement concerning self-service laundries. The first conversation concerned a store to be located at Grand Forks, North Dakota. The second conversation was about a store to be located at Minot, North Dakota. At the conclusion of the second conversation the plaintiffs paid $500 to Erlandson, and Maurice Berg signed a sale and purchase contract and a financial statement prepared by Erlandson.

The sale and purchase contract was an agreement for the purchase of 30 washers, 12 dryers, and related equipment necessary for the operation of a self-service laundry and was in the form of a contract of conditional sale. The contract provided for a total cash price of $22,-437.45; a downpayment of $2,243.45, the balance of which was to be paid before shipment; an amount to be financed of $20,194; a time price differential of $3,937.83; the total amount of the note of $24,121.83; and a total time price of $26,365.28. The contract also provided: "$24,121.83 balance of time selling price to be evidenced by an installment note payable in 35 monthly install-

ments of $670.00 each and a final payment of $671.83. * * * IF OTHER THAN A CASH SALE, THIS CONTRACT IS SUBJECT TO ACCEPTANCE BY THE SELLER AFTER APPROVAL OF PURCHASER'S CREDIT BY FINANCE FACTOR AT ITS HOME OFFICE. ACKNOWLEDGMENT TO THE PURCHASER BY LETTER OF ACCEPTABLE CREDIT BY THE FINANCE FACTOR SHALL BE DEEMED ACCEPTANCE BY THE SELLER."

Maurice Berg testified that Erlandson said that the contract and financial statement would be submitted to the finance company for its approval. Erlandson testified that the "finance factor" referred to in the contract was Midwest Laundry Equipment Corp. Erlandson further testified that he explained to the plaintiffs that the cash price of the equipment was $22,437.45 and that the time price after payment of the full downpayment would be $24,121.83; and that the time price differential of $3,937.83 was obtained by multiplying the cash price less the downpayment by 6½ percent per year for 3 years.

About 2 weeks after the conversations with Erlandson, William W. Siebert, a salesman for Midwest Laundry Equipment Corp., called the plaintiffs by telephone. Siebert said that he had learned that two other stores were to be opened in Minot and that he did not think that the plaintiffs should go ahead with the plan to open a store in Minot.

A week or 10 days later Siebert again called the plaintiffs and stated that a location in Norfolk, Nebraska, was available. Paul A. Pothast, an employee of Midwest Laundry Equipment Corp., talked with the plaintiffs about the Norfolk location and the plaintiffs looked at the proposed location.

After the plaintiffs had looked at the proposed location in Norfolk, they met with Siebert at the office of Midwest Laundry Equipment Corp. in Omaha. During that conversation the plaintiffs agreed to purchase equip-

ment for the store at Norfolk, signed a blank form of a sale and purchase contract, and paid some $1,800 to Siebert. The plaintiffs testified that they were not quoted a cash price and a time price for the equipment which they agreed to purchase for the Norfolk store. Siebert testified that he did not recall discussing a cash price and a time price with the plaintiffs and that he knew their order was going to be a time-sale purchase when it came in. About 2 weeks after the conversation at Omaha the plaintiffs received a copy of the sale and purchase contract.

In December 1959, Maurice Berg was employed for a short time as a trainee salesman by Midwest Laundry Equipment Corp.

In February 1960, Siebert came to the plaintiffs' home in Norfolk, Nebraska, and asked for their copy of the sale and purchase contract for the equipment for the Norfolk store. Siebert then destroyed their copy of the contract and stated that Industrial Credit Company had not accepted the financial statement of Maurice Berg. At this time the equipment had been delivered and its installation in the Norfolk store was nearly complete. Siebert then proceeded to write out a new sale and purchase contract with a retail installment contract, both of which were signed by the plaintiffs. The retail installment contract signed at Norfolk in February 1960 was eventually assigned to Industrial Credit Company by Midwest Laundry Equipment Corp. and is the contract which is the subject of this action.

The new sale and purchase contract and the retail installment contract provided for a downpayment of $4,856.96. However, no additional amount was paid to Midwest Laundry Equipment Corp. by the plaintiffs. The only amounts that were ever paid to Midwest Laundry Equipment Corp. were the amounts that had been previously paid. The new contracts provided for 35 monthly payments of $725 and a final payment of $743.28. The contracts recited a cash sale price of

$26,713.28, cash downpayment of $4,856.96, amount to be financed $21,856.32, time price differential $4,261.92, total amount of note $26,118.24, and total time price of $30,380.16.

The evidence in this case, taken as a whole, shows that Midwest Laundry Equipment Corp. did not intend to make any sale other than a cash sale. In the event that a purchaser was unable to pay the full cash price, the sale was contingent upon Midwest Laundry Equipment Corp. being able to make suitable arrangements for the financing of the balance of the cash price. If financing could be arranged, the purchaser then signed a retail installment contract which was intended to appear to evidence a time sale but which in fact evidenced a loan for the payment of the balance of the cash price. The evidence concerning the "rewriting" of the contract at Norfolk in February of 1960, for the purpose of stating a higher downpayment than was actually made, is convincing evidence that the transaction in question was not a time sale made in good faith.

The contract in this case provided a charge of $4,-261.92 to finance a balance of $21,856.32, the entire amount to be paid in 36 equal monthly installments. The Installment Loan Act as amended prohibits any charge in excess of 9 percent per annum where the indebtedness is in excess of three thousand dollars. § 45-138, R. R. S. 1943. The charge which was made is in excess of 9 percent per annum. The contract is, therefore, void. Powell v. Edwards, *supra.*

The plaintiffs are entitled to judgment against Midwest Laundry Equipment Corp. for the $500 paid in November 1959, plus the balance of the downpayment paid in Omaha. Midwest Laundry Equipment Corp. is entitled to a credit in the amount of $725 which the plaintiffs admit having received from Midwest Laundry Equipment Corp. on or about May 3, 1960.

The record does not show the exact amount of the payment made in Omaha. The district court is au-

thorized to receive further evidence, if necessary, to determine the amount of that payment.

The judgment of the district court is reversed and the cause is remanded for further proceedings, if necessary, and with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.