DALE ELECTRONICS, INC., APPELLANT, V. COPYMATION, INC.,
ET AL., APPELLEES.

132 N. W. 2d 788

Filed January 29, 1965.    No. 35827.

Haney, Walsh & Wall, for appellant.

Robert L. Berry and Kennedy. Holland, DeLacy & Svoboda, for appellee Copymation, Inc.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, and McCOWN, JJ.

SPENCER, J.

The sole question involved in this appeal is whether the district court erred in sustaining a special appearance filed by Copymation, Inc., an Illinois corporation.

The appellant, Dale Electronics, Inc., hereinafter referred to as Dale, brought this action against Copymation, Inc., hereinafter referred to as Copymation, and Standard Blueprint Company, a Nebraska corporation, hereinafter referred to as Standard, to recover damages for alleged breach of warranty of fitness of use of a copy machine manufactured by Copymation and sold to Dale by Standard. Service was had on Copymation under

the provisions of section 21-1201, R. R. S. 1943, by service on the Secretary of State. Copymation filed a special appearance which was sustained by the district court.

Copymation is engaged in the business of manufacturing and distributing certain jobbed items in the technical reproduction field. It has never qualified and is not licensed to do business in Nebraska as a foreign corporation, and has never appointed a resident agent or designated a registered office in the state. Copymation sells copy machines which it manufactures to users as well as to retail dealers who in turn sell them to users. It maintains a sales force on both the east and west coasts and in the southwest, but does business in the midwest only through dealers to whom it sells at wholesale. Standard is such a dealer in the State of Nebraska. Copymation maintains no office of any nature in Nebraska. Its salesmen do not call on Standard or on any prospective user in Nebraska. It has never had a show, exhibition, or demonstration of its products in Nebraska. The only advertising it does is through trade publications on a national basis. It does not participate in any advertising on a local level anywhere in the country, by sharing expenses, or otherwise.

The copy machine which is the subject of this litigation was sold to Dale at Columbus, Nebraska, by a Standard salesman on a Standard sales order. Standard, which is located in Omaha, then sent a purchase order on its own form to Copymation, with directions to ship the machine direct to Dale at Columbus. The machine was shipped by common carrier, as per instructions. When it arrived at Columbus, Standard was notified, and the machine was installed for Dale under the direction of an employee of Standard. Standard paid Copymation the wholesale price for the machine and billed Dale for the agreed price. Payment to Copymation was in no way dependent upon collection. In the event Dale did

not pay Standard, the latter was still obligated to pay Copymation.

Once a machine is sold to a dealer, Copymation maintains no control over the resale of such machine at retail, and has no connection or responsibility for its installation. The Standard employee who installed the machine had spent 5 days at the Copymation factory school to familiarize himself with the product. His transportation to the factory was paid by Standard but his expenses at the factory were paid by Copymation. This, however, is a purely voluntary service provided by Copymation to familiarize dealer servicemen with the operation and construction of its machines. Copymation exercises no control of any nature over the servicemen.

Standard does not maintain a stock of Copymation equipment, nor has it ever displayed any Copymation machines or any placards or signs pertaining to Copymation. Standard has never advertised Copymation products in the newspapers. Standard salesmen are full-time Standard employees, and sell copy machines made by other manufacturers as well as those of Copymation. They also sell all other items handled by Standard, including materials for copy machines. They have no connection with and receive no remuneration of any nature from Copymation. The copy machine sold to Dale was only the second sale of a Copymation machine in the State of Nebraska.

We have detailed the course of dealings at length to show that the transaction involved herein is a sale by a dealer or jobber who purchased a machine from Copymation after the dealer or jobber had found a purchaser. Does this type of transaction constitute doing business in Nebraska on the part of Copymation sufficient to authorize service of process under section 21-1201, R. R. S. 1943?

Historically, the jurisdiction of courts to render judgments in personam was grounded on their de facto power

over the defendant's person. Presence within the territorial jurisdiction of a court was prerequisite to the rendition of a judgment personally binding the defendant. Now, however, as capias ad respondendum has given way to personal service of summons or other forms of notice, due process requires only that to subject a defendant to a judgment in personam if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. See International Shoe Co v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057. In that case, the defendant, a nonresident corporation, employed 11 to 13 salesmen to solicit business. These salesmen lived in the state, solicited business solely in the state, and worked under the direct supervision and control of a sales manager located at the home office of the corporation in another state. Process for the corporation was served on one of these salesmen, and the court held that the requirements of due process were satisfied.

In Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151, we held: "Before any state can subject a foreign corporation to the jurisdiction of that state such corporation must have either expressly consented to such jurisdiction or must have done sufficient business therein to constitute a submission to such jurisdiction.

"No all-embracing rule can be laid down as to just what constitutes the doing of sufficient business in a state by a foreign corporation in order to subject it to process of that jurisdiction. Each case must necessarily be determined by its own facts."

In that case, the defendant, a Texas corporation, handled the sale of its products in Nebraska through four wholesalers. While it had no resident agent or place of business in Nebraska, it did employ a traveling salesman who worked on a salary and commission,

and who solicited retail outlets in Nebraska, including 300 to 400 druggists. All the orders he received he sent to one of the four wholesalers who would fill the order from the stock it had purchased from the defendant. In that case we held the defendant was doing business in Nebraska sufficient to authorize service under section 21-1201, R. R. S. 1943.

A more recent case, Berg v. Midwest Laundry Equipment Corp., 175 Neb. 423, 122 N. W. 2d 250, involved the question as to whether a foreign corporation, Industrial Credit Company, by purchasing retail installment contracts executed in Nebraska by residents of Nebraska, was doing business in Nebraska. The contracts were obtained in Nebraska by Midwest Laundry Equipment Corporation, and were purchased from it at the home office of the Industrial Credit Company in St. Paul, Minnesota. The contract involved in that case was refused by the Industrial Credit Company when first offered, and was later accepted after it had been rewritten in Nebraska to meet objections. We held the evidence adduced was not adequate to show that Industrial Credit Company was doing business in Nebraska sufficient to authorize service under section 21-1201, R. R. S. 1943.

Dale contends that essentially the present case is very similar to the facts in Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151. It is to be noted that Globe employed its own salesman to solicit orders in Nebraska. Dale argues that this is immaterial because in the present case Copymation is actually utilizing the entire sales force of Standard to sell its products. We cannot accept the inference that Dale draws. In any event, we suggest that there are many other distinguishing characteristics. Suffice it to say that Copymation did no sales promotion of any nature in Nebraska; it had no control or supervision of any nature over Standard sales force; and Standard salesmen were at all times employees of Standard, and accountable only to Standard.

The relation of Standard to this transaction is that of an independent contractor and not as an agent of Copymation. Standard was in business for itself. It could buy Copymation machines at wholesale, but was under no obligation to buy or to sell the products of Copymation. In dealing with Dale, Standard was dealing on its own account. We do not feel that the filling of orders solicited by an independent contractor brings Copymation within the orbit of doing business in Nebraska sufficient to warrant service of process under section 21-1201, R. R. S. 1943.

It does seem, as a minimal requirement, that the manner and extent of doing business in this state must be such as to warrant the inference of an actual as distinguished from a merely fictitious or constructive presence in the state, and such that it may be said that the corporation itself, through the representative capacity of its agents, is in the state. To hold that a foreign corporation is doing business in Nebraska merely because it fills an order received by mail from a Nebraska resident without more appearing, is to extend the doctrine of doing business in the state for the purpose of constructive service too far.

There was no proper service of process on Copymation. Its special appearance was properly sustained, and the order sustaining it is affirmed.

AFFIRMED.