Frederick N. **PETERSON, Administrator of the Estate of Charles Steven Peterson, Deceased, Appellant,**

v.

**U–HAUL CO., Appellee.**

No. 19338.

United States Court of Appeals
Eighth Circuit.

April 25, 1969.

Lyman L. Larsen, of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellant.

Theodore J. Stouffer, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., for appellee, John B. Henley, Omaha, Neb., on the brief.

Before GIBSON, LAY and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

Frederick N. Peterson, administrator of the estate of Charles Steven Peterson and plaintiff below, appeals from decisions of the United States District Court for the District of Nebraska sustaining motions of the defendant, U-Haul Co. (a North Carolina corporation), to

dismiss for not being amenable to suit in Nebraska under either Nebraska's Non-Resident Motor Vehicle Statute or Nebraska's Business Corporation Act. We affirm the decisions of the District Court.

On June 7, 1965, Charles Steven Peterson, a young lad of 11 years, was walking north on U. S. Highways 81 and 30 across the Loop River Bridge south of Columbus in Platte County Nebraska. He was walking close to the east side of the bridge and was carrying a fishing pole. Gary Frederick Neuhalfen was also proceeding north on the highway in a 1953 Dodge automobile, pulling a cargo trailer which he had leased from a U-Haul dealer in Long Beach, California. Neuhalfen's automobile overtook the boy on the bridge and as the trailer passed by it struck the boy and catapulted him some 20 feet through the air into the bridge structure. The boy suffered massive skull and brain damage from which he died on June 15, 1965.

The plaintiff, as administrator, brought a diversity action in the United States District Court for wrongful death against Gary Frederick Neuhalfen, the driver of the automobile, and U-Haul Co. (U-Haul), a North Carolina corporation, as owner of the trailer. A South Carolina license on the trailer had been issued to defendant U-Haul. Plaintiff alleged specific acts of negligence against the driver, Neuhalfen, and also against U-Haul, which allegations included defective manufacture and improper maintenance of the trailer.

Plaintiff first sought to establish jurisdiction in Nebraska under the state's Non-Resident Motor Vehicle Statute, and then after an adverse ruling quashing service, maintained that defendant

U-Haul was doing business in Nebraska, thus making it amenable to suit in Nebraska. The Honorable Richard E. Robinson, Chief Judge, held: (1) the Nebraska Non-Resident Motor Vehicle Statute was not applicable as defendant U-Haul's participation in the series of events that placed the accused trailer in Nebraska did not constitute the use or operation of a motor vehicle in Nebraska by U-Haul; and (2) " * * * the mere presence of property legally owned by U-Haul Co. in the state is not sufficient to meet the minimal requirement for 'doing business' in Nebraska."

## I.

### SERVICE UNDER NEBRASKA'S NON-RESIDENT MOTOR VEHICLE STATUTE

The District Court in its opinion said it is " * * * doubtful whether a trailer is a 'motor vehicle' * * * " under Nebraska's Non-Resident Motor Vehicle Statute, citing Hayes Freight Lines v. Cheatham, 277 P.2d 664, 48 A.L.R.2d 1278 (Okl.1954), but purposely did not reach that issue. Plaintiff contends a cargo trailer is a motor vehicle, while defendant U-Haul contends otherwise.[1] We likewise refrain from passing on that issue as the holding that defendant U-Haul was not using or operating a vehicle on the Nebraska highways is dispositive on the applicability of the Non-Resident Motor Vehicle Statute.

Plaintiff first views Neuhalfen as the agent for U-Haul in using the trailer on the highways of Nebraska, thus subjecting U-Haul to the jurisdiction of Nebraska. Plaintiff also contends that even if Neuhalfen is not considered the agent of U-Haul, U-Haul was engaged in the "use" of the trailer.[2]

---

1. There is a split of authority as to whether a trailer or a semi-trailer becomes part of a motor vehicle when it is attached to the motor vehicle. See, 60 C.J.S. Motor Vehicles § 1, p. 110 (1949).

2. U-Haul denied that it is the owner or lessor of the trailer. According to a prospectus describing the U-Haul Rental

System (discussed more fully *infra*), defendant U-Haul as a Rental Company in the System has the responsibility to license and maintain trailers in its territory; Fleet Owners, however, bear the expense of licensing and maintenance and retain ownership of the trailers used in the System.

Plaintiff introduced a letter from the South Carolina State Highway Depart-

In a diversity case neither this Court nor the District Court make any declarations of law. The federal courts undertake to apply state law where authoritative decisions are available. Where there are no governing state decisions, then the federal court must rule the issues as it is believed the highest state court would rule. Admittedly, this is a hazardous and unsatisfactory method of deciding litigation. Federal court decisions in diversity cases have no precedential value as state law and only determine the issues between the parties. Regardless of what it thinks the law ought to be the federal court must make an objective effort to rule the issues according to state law.

The Nebraska Non-Resident Motor Vehicle Statute [3] is to be strictly construed. The Supreme Court of Nebraska in Rose v. Gisi, 139 Neb. 593, 298 N.W. 333, 335 (1941) held: "It is well settled in this state that the nonresident motorists' law is to be strictly construed and held to apply only to those persons specifically named in the statute." See, Covert v. Hastings Mfg. Co., 44 F.Supp. 773, 776 (D.C.Neb.1942).

Plaintiff contends that both the defendant U-Haul and Neuhalfen, as its agent, were using and operating the trailer on Nebraska highways. Plaintiff considers Neuhalfen the agent of defendant U-Haul in two respects. First, Neuhalfen, pursuant to his agreement with a U-Haul dealer in California, was to deliver the trailer to a dealer in South Dakota, making Neuhalfen an agent for delivery; and second, since under Nebraska law Neuhalfen's negligence is imputed to defendant U-Haul, Neuhalfen is thereby a statutory agent of U-Haul.

The first contention that Neuhalfen was an agent for delivery does not comport with common law agency concepts. Neuhalfen leased the trailer for his own purpose—primarily to haul that which he desired to South Dakota. The California U-Haul dealer's interest in the transaction was rental proceeds from the lease agreement, not the transporting of the trailer from California to South Dakota. In Boulay v. Pontikes, 93 F.Supp. 826 (W.D.Mo.1950), plaintiff was involved in an accident with the lessees of an auto owned by an out-of-state leasing company and sought to have the company served under Missouri's Non-Resident Motorist Statute. Service would be proper under the statute if the lessee was an "agent" of the lessor. The Court held at 828 of 93 F.Supp.:

"We do not believe that authorities are necessary to conclude that the term 'agent' as used in said statutes [nonresident motorist statutes] must be interpreted other than according to

ment stating that registration and non-transferable title were issued on the trailer to U-Haul as it indicated it was holding "negotiable registration and title." The District Court, following Turpin v. Standard Reliance Insurance Co. (Mutual), 169 Neb. 233, 99 N.W.2d 26, 34–35 (1959) that a certificate of title is generally conclusive evidence of ownership, held that " * * * the exhibits offered by the plaintiff are conclusive as to ownership * * *." Further, the Court ruled that U-Haul's denial that it was owner or lessor of the trailer would be a defense on the merits and not a proper inquiry on a motion to dismiss for want of jurisdiction. Rose v. Gisi, 139 Neb. 593, 298 N.W. 333, 336 (Neb. 1941).

3. R.R.S.Neb.1943 (Reissue 1964) 25-530 provides in pertinent part as follows:

"(1) The use and operation by a non-resident of the State of Nebraska or his agent of a motor vehicle over or upon any street, highway, or any other place within the State of Nebraska, shall be deemed an appointment, by such nonresident, of the Secretary of State of the State of Nebraska as his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, growing out of such use or operation of a motor vehicle over or upon the streets, highways, or any other place within this state, resulting in damages or loss to person or property.

"(2) The use or operation shall be a signification of his agreement that any such process which is so served in any action against him shall be of the same legal force and validity as if served upon him personally within this state."

the legal meaning which the law ordinarily attaches to it. In the sense in which that term is therein used, it is apparent that it contemplates a relationship that has all the legal consequences of *respondeat superior* considered from a tort liability standpoint. That is the only legal and sensible construction that can be made of such term so as to make a non-resident owner of an automobile liable for an injury occasioned by the negligent use of his car within the ambit of said statutes.

\* \* \* \* \* \*

"A 'lessee' is not an 'agent' of the owner of a motor vehicle within the purview of said statute."

Accord, Gately v. U-Haul Co., 350 Mass. 483, 215 N.E.2d 743, 744 (1966).

Plaintiff's second contention that Neuhalfen was U-Haul's agent by statute does not appear warranted. R.R.S.Neb. 1943 (Reissue 1968) 39–7,135 [4] imposes joint liability on the owner and the lessee of any leased truck or trailer. Plaintiff reasons that the statute makes Neuhalfen the agent of U-Haul by imputing his negligence to U-Haul. Plaintiff then equates the term "agent" in the Non-Resident Motor Vehicle Statute with the joint statutory liability expressed in Chapter 39–7,135 and urges that "as a matter of law and public policy a principal-agent relationship" should be considered as established.

■ Plaintiff cites no cases directly in point for his contention, but seeks to draw an analogy to the family purpose doctrine. Ewing v. Thompson, 233 N.C. 564, 65 S.E.2d 17 (N.C.1951); Norwood v. Parthemos, 230 S.C. 207, 95 S.E.2d 168 (S.C.1956); and Morrison v. District Court, 143 Colo. 514, 355 P.2d 660 (Colo.1960), utilize the family purpose doctrine to attach liability on nonresi-dent automobile owners served under nonresident motorist statutes. The rationale of these cases is that a member of a family or his nominee driving a family automobile is the agent of the owner, making the owner vicariously liable for the agent's negligence. This rule applies in Nebraska, Piechota v. Rapp, 148 Neb. 442, 27 N.W.2d 682, 685 (Neb.1947).

■ Even assuming *arguendo* the applicability of R.R.S.Neb.1943 (Reissue 1968) 39–7,135, a point not passed on by the District Court, we do not believe the statute establishes an agency relationship between lessor and lessee and thus between Neuhalfen and U-Haul. Plaintiff's analogy to the family purpose doctrine is not persuasive. That doctrine is not based on the common law rules of agency as generally understood and applied, but is rather a legal fiction utilized as an instrument of public policy in imposing vicarious liability on those whom the courts think should bear the responsibility for negligence committed by a member of the family. See, 2 Harper and James, The Law of Torts § 26.15, pp. 1420–1421 (1956): Prosser, Torts § 72, p. 497 (3d ed. 1964).

■ While R.R.S.Neb.1943 (Reissue 1968) 39–7,135 may serve to impute the negligence of a lessee to the lessor of a trailer in Nebraska, the statute does not purport to base its provision for vicarious liability on conventional concepts of agency, or *respondeat superior*. To say that the Legislature intended those parties made liable under Chapter 39–7,135 to be included as agents under the Non-Resident Motor Vehicle Statute is to do violence to legislative intent. The Legislature is capable of a more explicit expression in this area.

In Downing v. Schwenck, 138 Neb. 395, 293 N.W. 278 (Neb.1940), the Su-

---

4. R.R.S.Neb.1943 (Reissue 1968) 39–7,135, as amended, states:

"The owner of any leased truck, truck-tractor, whether with or without trailer, or trailer shall be jointly and severally liable with the lessee and the operator thereof for any injury to or the death of any person or persons, or damage to or the destruction of any property resulting from the operation thereof in this state."

preme Court of Nebraska held the Non-Resident Motor Vehicle Statute was not applicable to the personal representative of a deceased nonresident motorist, even though the personal representative of a resident was subject to suit and service for the torts of his decedent. The Court stated at 279–280 of 293 N.W.: "Liberal construction cannot, for the purpose of embracing other persons than those to whom a statute is expressly made applicable, supply that which the legislature has either deliberately, or inadvertently, or through lack of foresight, omitted." In 1949 the Nebraska Legislature amended the Non-Resident Motor Vehicle Statute to allow service on the personal representative of a deceased nonresident motorist. R.R.S.Neb.1943 (Reissue 1964) 25–530(3).

In like manner, if the Legislature intended that those persons subject to vicarious liability under R.R.S.Neb.1943 Reissue 1968) 39–7,135 should be included within the operation of the Non-Resident Motor Vehicle Statute, an express provision so providing should be the predicate for liability.

We, therefore, next consider the "use" aspect independently of the "operation" phase of the statute. The "use" concept is admittedly broader than "operation." Rose v. Gisi, 139 Neb. 593, 298 N.W. 333, 335 (1941). Freed from the application of principles of agency, was U-Haul engaged in the "use" of a motor vehicle on the Nebraska highways? Plaintiff's theory is that U-Haul is using the highways of Nebraska when a lessee tows a trailer owned by it. Plaintiff relies on Rose v. Gisi, *supra,* McDonald v. Superior Court, 43 Cal.2d 621, 275 P.2d 464 (Cal.1954), and Bowman v. Atlantic Baggage & Cab Company, 173 F.Supp. 282 (N.D.Fla. 1959).

In Rose v. Gisi, *supra,* two employees were sent into Nebraska in a truck owned by a nonresident, Gisi, in conjunction with his produce and trucking business. In defiance of Gisi's orders, the employee in charge of the truck allowed another employee to drive the truck and an acci-

dent occurred. The Court ruled Gisi's defense that the employee-driver was performing an act outside the scope of his employment, was sufficient to absolve Gisi of liability, but that Gisi was subject to service under Nebraska's Non-Resident Motor Vehicle Statute: "It is clear that the Gisi truck was being used on the highways of Nebraska in the furtherance of the business of Gisi at the direction of Gisi. These acts are sufficient to subject Gisi to the provisions of the nonresident motorists' law." 335–336 of 298 N.W.

In McDonald v. Superior Court, *supra,* a nonresident rental company which rented trucks through its agents in California was held amenable to service pursuant to California's Non-Resident Motorist Statute when a renter sustained injury while unloading one of the trucks. The Court said at 466 of 275 P.2d: "We conclude therefore that petitioner's agents operated the truck within the meaning of the statute when they rented it for immediate use upon the highways of this state."

In Bowman v. Atlanta Baggage & Cab Company, *supra,* defendant nonresident company rented a truck to another nonresident company which allowed its employee to drive the vehicle into Florida in contravention of the lease agreement between the companies. An accident ensued and the lessor nonresident company was held subject to service under the Florida Non-Resident Motorist Statute. The Court held that under Florida law the lessor "consented" to creation by the lessee of the right of action and the lessor would not be heard to say that such "consent" was lacking for service of process under the Non-Resident Motorist Statute. 285–286 of 173 F. Supp.

Neither the *Rose* case nor the *McDonald* case is directly in point. These are *respondeat superior* cases. In the case at bar, there is no master-servant relationship on which to predicate operation or use of the trailer in Nebraska. Inasmuch as U-Haul did not rent the

trailer to Neuhalfen in Nebraska, U-Haul cannot be deemed to have operated the trailer in the state under the authority of the *McDonald* case. The *Bowman* case supports plaintiff's theory, if it is assumed that a cargo trailer is a motor vehicle and that U-Haul is the lessor.

Adverse to plaintiff's "use" contention is Hayes Freight Lines v. Cheatham, 277 P.2d 664 (Okl.1954). A nonresident company loaned or interchanged a semi-trailer to another company by virtue of an interline agreement. The bailee company was licensed to do business in Oklahoma and an accident occurred there killing its driver. An action was brought against the nonresident owner. The Court denied service under the Oklahoma Non-Resident Motorist Statute and held *inter alia* that " * * * the trailer was not used and operated on Oklahoma's public highways by the owner * * * or by its agent or employee." 667 of 277 P.2d.

In Gately v. U-Haul Co., 350 Mass. 483, 215 N.E.2d 743 (1966) the Court held the mere renting of a trailer did not amount to operation of the trailer. In *Gately*, U-Haul rented a trailer in Ohio to a point of destination in Massachusetts; the lessee was involved in an accident in Massachusetts because of an alleged defect in the trailer. Service under the Non-Resident Motorist Statute was denied, the Court stating at 744 of 215 N.E.2d: "No reasonable inference is open that the defendant or its agent was operating the trailer * * * in this Commonwealth [Massachusetts]." [5]

In absence of a definitive statement by the Supreme Court of Nebraska, we cannot say that the District Court erred in finding that U-Haul was not amenable to service of process under the Nebraska Non-Resident Motor Vehicle Statute. As held by the District Court:

"We do not interpret the statute to extend this far. 'Use' under its provisions is directed at a more immediate and physical employment of the vehicle than its abstract 'use' as a capital investment."

## II.

## SERVICE UNDER NEBRASKA'S BUSINESS CORPORATION ACT AND ACTS PERFORMED STATUTES

The District Court denied jurisdiction over defendant U-Haul based on service of process under Nebraska's Business Corporation Act, R.R.S.Neb.1943 (1967 Cum.Supp.) 21–20,114,[6] which provides for service of process on any foreign corporation doing business in Nebraska whether or not such corporation has obtained a certificate of authority to do business and appointed a resident agent.

Nebraska follows no set formula in determining what constitutes doing business,[7] and as noted in Brown v.

---

5. The force of the holding in *Gately, supra*, on the case at bar may be somewhat diminished as the Massachusetts Non-Resident Motorist Statute, Mass.Gen. Laws c. 90, § 3A, provides for service on nonresidents involved in the "operation" of a vehicle on the highways of that state, whereas the Nebraska statute applies to those involved in the "use or operation" of a motor vehicle on Nebraska highways.

6. Which reads in relevant part:
    "Whenever a foreign corporation shall do business in this state, and fails to appoint or maintain a registered agent in this state, or whenever any such registered agent cannot with reasonable diligence be found at the registered office, or whenever the certificate

of authority of a foreign corporation shall be suspended or revoked, then the Secretary of State shall be an agent of such corporation upon which any such process, notice, or demand may be served."

7. This *ad hoc* approach is in accord with the practice followed by most jurisdictions. As stated in Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292, 295 (6 Cir. 1964):

    "The existence or nonexistence of the necessary 'minimum contacts' to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the *International Shoe Company* case must obviously be worked

Globe Laboratories, 84 N.W.2d 151, 157 (1957):

> "No all-embracing rule can be laid down as to just what constitutes the manner of doing business by a foreign corporation in order to subject it to process in any given jurisdiction. Each case must necessarily be determined by its own facts." (Citations omitted.)

To determine whether defendant U-Haul Co. of North Carolina was doing business in Nebraska an examination must be made of the method employed in conducting defendant's U-Haul business. In addition, plaintiff views as significant the interrelationships of the entities comprising the entire U-Haul Rental System. The record pertinent to U-Haul's doing business in Nebraska consisted of (1) photographs taken by plaintiff of several trailers licensed to U-Haul of North Carolina and bearing the advertisement: "Rent One Way Anywhere" being offered for hire on a Rental Dealer's premises in Omaha, Nebraska; (2) an affidavit executed by John W. Kamphuis, president of defendant U-Haul; and (3) a prospectus filed with the Securities and Exchange Commission describing the U-Haul Rental System, an integrated group of many corporations and entities that are set up to operate the business of furnishing trailers and trucks for hauling cargo and merchandise.

The prospectus delineated the four divisions which make up the U-Haul Rental System: (1) Fleet Owners, (2) Arcoa, Inc., (3) Rental Companies, and (4) Rental Dealers.

Fleet Owners are investors who purchase a complete or partial fleet of trailers to be used in the System. They receive 35 per cent of the income of all rental transactions wherever they take place. While most of the parties investing capital in trailers are not otherwise connected with the U-Haul System, many

out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles."

Rental Dealers and most Rental Companies have also purchased fleets. The record does not indicate whether defendant U-Haul Co. of North Carolina is a Fleet Owner, or who is the owner of the trailer involved in this tragedy.

Arcoa, Inc. performs accounting, clearing house, technical and advisory services for the other divisions of the System and receives 10 per cent of all rental revenues within the System for its services. All of the capital stock of Arcoa, Inc. is owned of record and beneficially by the members of the family of L. S. Shoen, founder and organizer of the U-Haul System. The L. S. Shoen family also owns the majority of capital stock in the Rental Companies.

The Rental Companies, of which defendant U-Haul Co. of North Carolina is one, are responsible for the marketing and supervision of maintenance and repair of the trailer fleets in the System that appear in the states in which they are authorized by Arcoa, Inc. to operate. They also obtain licenses for the trailers. Rental Companies receive a percentage of rental income ranging from 15–20 per cent of the local trailer fees to 30 per cent of round-trip and one-way trailer rental fees transacted in their particular territories.[8]

Rental Dealers are independent businessmen who rent trailers to the public. They receive 35–40 percent of local rental income and 25 per cent of round-trip and one-way rental income of transactions they make with customers.

The affidavit of Kamphuis recited that U-Haul of North Carolina does no business in Nebraska and the only states in which the corporation is authorized to do business are North Carolina and South Carolina. The rights and duties of the corporation arise out of its contract with Arcoa, Inc. wherein U-Haul of North Carolina is responsible for advertising, local business licenses and taxes,

8. As of September 1965, there were 31 Rental Companies organized as corporations doing business in 48 states and the District of Columbia.

1182

acquisition and supervision of dealers, marketing trailer fleets, provision of adequate repair facilities, investigation of accidents, maintenance of a lost and stolen equipment service, distribution of trailer supplies and the securing of licenses in the states of North Carolina and South Carolina only. Pursuant to such duties, defendant U-Haul obtained a 1965 utility trailer license in South Carolina, which was installed on the trailer involved in the accident, but beyond that act had nothing to do with the trailer.

From the above evidence, the following conclusions can be drawn regarding the extent of defendant U-Haul's business activities within Nebraska: (1) trailers owned (or at least licensed) by defendant are rented, maintained and serviced by Rental Dealers in Nebraska affiliated with the U-Haul Rental System; (2) trailers owned by defendant are rented outside the state to a point of destination in Nebraska; (3) defendant receives no rental fees from Nebraska except possibly insofar as a one-way or round-trip rental is initiated in North or South Carolina to a point of destination in Nebraska; (4) defendant shares a pro rata percentage of the expense for the national advertising program promoting the rental of U-Haul trailers; (5) defendant makes required contributions to the U-Haul Rental System program of reserve and redistribution which is used to pay expenses incurred by the System in all states and shares in any unspent surplus remaining in the fund at designated accounting periods; and, (6) the U-Haul System, with which defendant U-Haul of North Carolina is affiliated, is present in Nebraska in the form of separate Rental Companies and Rental Dealers; and the tradename "U-Haul" is protected in Nebraska and all divisions

of the highly integrated System benefit as a result of the presence of "U-Haul" trailers in the state.

But do the above facts constitute a presence in Nebraska and the conduct of activities, more or less continuous, so as to render defendant U-Haul subject to the jurisdiction of Nebraska under present Nebraska law? McMaster v. Robinson's Women's Apparel, 45 F.Supp. 99 (D.C.Neb.1942).

■ We do not think the above facts sufficient to constitute the doing of business in Nebraska nor sufficient to satisfy a predicate for jurisdiction under R.R.S.Neb.1943 (1967 Cum.Supp.) 25–536 [9] or 21–20,114. Irrefragably, the outer limits of possible jurisdiction over foreign corporations and nonresidents have been extended far beyond those of decades ago. The limits of due process were broadened by the United States Supreme Court in 1945 in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) to embrace "minimum contacts" (consonant with) "traditional notions of fair play and substantial justice."

However, we are not concerned in this case with probing the outer limits of due process but only with whether defendant U-Haul has so conducted itself as to fall within the doing business requirement in Nebraska or in the performing of acts in Nebraska that would make it amenable to Nebraska process.

On the doing business issue the District Court concluded: "[T]he mere presence of property legally owned by U-Haul Co. in the state is not sufficient to meet the minimal requirement for 'doing business' in Nebraska." [10] Apparently, Nebraska requires under its doing business statute, R.R.S.Neb.1943 (1967 Cum.Supp.) 21–20,114, physical

9. The District Court's opinion did not discuss Chapter 25–536, but the parties on appeal have mentioned it. We therefore will consider its applicability to the issues.

10. The Court also found " * * * the defendant has no office, telephone, agents,

bank account or service facilities in Nebraska. There is no evidence that U-Haul Co. derives any income from Nebraska while there is some evidence to the contrary. Defendant does intermittently have property within the State."

presence in the state. Dale Electronics, Inc. v. Copymation, Inc., 178 Neb. 239, 132 N.W.2d 788, 791 (1965) held:

> "It does seem, as a minimal requirement, that the manner and extent of doing business in this state must be such as to warrant the inference of an *actual as distinguished from a merely fictitious or constructive presence* in the state, and such that it may be said that the corporation itself, through the representative capacity of its agents, is in the state. To hold that a foreign corporation is doing business in Nebraska merely because it fills an order received by mail from a Nebraska resident without more appearing, is to extend the doctrine of doing business in the state for the purpose of constructive service too far." (Emphasis supplied.)

Also, in Berg v. Midwest Laundry Equipment Corporation, 175 Neb. 423, 122 N.W.2d 250 (1963) the Court held the purchasing of retail installment contracts by a foreign corporation through a Nebraska corporation did not constitute doing business in Nebraska. See also, Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6 Cir. 1964) where it was held that the presence of dealers and a subsidiary corporation in a state did not constitute sufficient contact to warrant the exercise of *in personam* jurisdiction over a parent corporation.

The Nebraska cases relied on by plaintiff of Brown v. Globe Laboratories, 165 Neb. 138, 84 N.W.2d 151 (Neb.1957) (selling of products through wholesalers, holding of promotion meetings and presence of a soliciting traveling salesman); McMaster v. Robinson's Women's Apparel, 45 F.Supp. 99 (D.C.Neb.1942) (presence in the state on a four months' construction project); Klopp v. Creston City Guarantee Water Works Co., 34 Neb. 808, 52 N.W. 819, 33 Am.St.Rep. 666 (1892) (debt contracted in Nebraska by a managing agent temporarily within the state); Carter v. American Bus Lines, Inc., 169 F.Supp. 460 (D.C.Neb.1959) (solicitation of bus sales in Nebraska three or four times a year, with occasional maintenance service provided in state by representative) are all cases where an acknowledged agent or representative was physically present in the state and are cases where substantial contacts were made within the state with the possible exception of *Klopp*. These cases all base a finding of doing business on far more substantial contacts than the mere presence of an occasional trailer that has come to a temporary resting place in Nebraska. We, therefore, hold that the experienced trial judge, Chief Judge Robinson, was correct in his interpretation of the Nebraska law on this issue.

Plaintiff correctly asserts that Nebraska has adopted a more liberal approach to *in personam* jurisdiction by the enactment of a long-arm statute, R.R.S.Neb.1943 (1967 Cum.Supp.) 25–536, which statute, in addition to the transaction of any business in the state, provides for personal jurisdiction in the case of tortious injury in the state by any act or omission outside of the state where the tort feasor " * * * regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state." But, again, the statute requires actual presence in the state plus an additional requirement of regular or persistent course of conduct.

There is some dicta in Busboom v. Gregory, 181 Neb. 246, 147 N.W.2d 626 (Neb.1967) that indicates Nebraska would assume jurisdiction over a foreign corporation with a managing agent in Nebraska if the cause of action arose out of an act caused to be done in Nebraska or elsewhere with consequences in Nebraska, and the act established such a relationship of the corporation to Nebraska that exercise of jurisdiction would be reasonable. However, the actual holding in *Busboom* was that it was unreasonable to assume jurisdiction over a foreign corporation that sold floor coverings wholesale to a subsidiary domestic

corporation and which had agents in Nebraska soliciting orders which were accepted out of state, even when the managing officer of the foreign corporation was served while in Nebraska. This case, though not in point as it considered jurisdiction predicated on the service of a managing agent temporarily within the state, is indicative of the Nebraska Supreme Court's view on the issue of reasonableness as applied to the assumption of jurisdiction.

### III.

### DEFENDANT U-HAUL'S AFFILIATION WITH THE U-HAUL RENTAL SYSTEM AS A BASIS OF POSSIBLE JURISDICTION

The plaintiff advances the theory that when several corporations are operating under a common hallmark and under the control of one individual and his family, the doing business within a jurisdiction by any of the several corporations should constitute the doing of business within the jurisdiction by all of them. It is apparent that the overall U-Haul Rental System presents an intricate and pervasive operation that does business in and has contacts with 48 states and the District of Columbia, including Nebraska. Defendant U-Haul Company of North Carolina benefits directly from rentals made in its territory to a termination in Nebraska, and also indirectly from the success of the System in the Nebraska market in that the System's Nebraska affiliates contribute to the reserve and redistribution fund and enhance the goodwill of the "U-Haul" tradename.

Plaintiff points to Darling Stores Corporation v. Young Realty Co., 121 F.2d 112 (8 Cir. 1941), cert. denied 314 U.S. 658, 62 S.Ct. 111, 86 L.Ed. 527 construing Nebraska law; S.O.S. Co. v. Bolta Co., 117 F.Supp. 59 (N.D.Ill.1953); and Massachusetts Bonding & Ins. Co. v. Master Laboratories, 143 Neb. 617, 10 N.W.2d 501 (Neb.1943)—cases dealing with piercing the corporate veil, or in one corporation utilizing another corpora-

tion as an agent for the transaction of business in a state. In Darling Stores Corporation, *supra,* it is stated at 116 of 121 F.2d: " * * * [C]ourts will ignore the fiction of corporate legal entity when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud." However, the doing business of a subsidiary corporation in a state does not without more confer jurisdiction over the nonresident parent corporation. Cannon Manufacturing Company v. Cudahy Packing Company, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Nagl v. Northam Warren Corporation, 8 F.R.D. 130, 135–136 (D.C.Neb.1948).

In *Nagl, supra,* defendant New York corporation purchased the controlling capital stock of a Nebraska corporation. The New York corporation purchased a substantial portion of the subsidiary's output and leased machinery to it yielding a considerable return. The subsidiary conducted its business in harmony with the wishes and suggestions and directions of the parent corporation which kept in contact with the subsidiary through correspondence and journeys to Omaha by agents of the parent corporation. The Court found that the subsidiary Nebraska corporation's identity was preserved as a reality, not as a fiction or device, and the subsidiary conducted its business without the parent corporation entering Nebraska to transact business. The Court noted at pp. 135–136 of 8 F.R.D.:

"The transaction of business within a state by one of its corporations whose stock is owned by a foreign corporation is not necessarily or usually the doing of business within the state by the latter. * * * This is true even though the parent foreign corporation dominates the operating domestic subsidiary through its stock ownership. * * * And in that connection interorganizational activity by the parent corporation in respect of its operating subsidiary is not, alone, ground for the conclusion that the former is doing

business in the state of the latter's incorporation."

We seriously doubt whether a common hallmark and concentrated control, in and of itself, is sufficient to treat the entire U-Haul Rental System as one unit for the basis of jurisdiction, where separately maintained and operated corporations that apparently have a practical business purpose each perform within limited areas and participate in different phases of the System's operations. To pierce the corporate veil it must be shown that the various corporate entities are a sham or a fraud or that the System is a subterfuge set up to escape legal liability. There is no evidence in this record to support such a finding.

We are, however, not unsympathetic with the plaintiff's problem in attempting to secure a local forum to pass upon his allegations of negligence concerning this unfortunate accident. As a general proposition it might be reasonable to hold that a foreign corporation that manufactures or places in use a defective chattel that it knows will enter into the stream of commerce and which causes the death of an innocent victim while being used for the purpose intended should be called to defend in a jurisdiction where the accident occurs.[11]

However, that proposition as stated is probably too general and too broad. Jurisdiction is obtained in certain classes of cases under the Non-Resident Motor Vehicle Statute and in various other types of actions under the so-called single or performed acts statute, but we do not think that under the specific issues presented in this case the plaintiff has demonstrated that the State of Nebraska under its present laws and decisions would assume jurisdiction under the factual circumstances of this case. In short, we cannot say that Chief Judge Robinson erred in his interpretation of the Nebraska law.

Judgment affirmed.

11. We are not attempting to pass upon the merits of the negligence issue but are only taking at face value the allegations of the complaint.